BERLIN *v.* BERLIN

[No. 271, September Term, 1964.]

*Decided May 26, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, SYBERT and BARNES, JJ.

*James J. Cromwell,* with whom were *Clark & Cromwell* and *William G. Clark* on the brief, for appellant.

*Alger Y. Barbee* and *Charles C. Futterer,* with whom were *Barbee & Starratt* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

We are concerned on this appeal with the modification of a divorce decree in which custody of the minor children was awarded, subject to further order of the court, to the mother who was then domiciled in Maryland but who, along with the children, is presently residing in New York.

After the somewhat protracted and acrimonious divorce proceedings brought by the wife and mother (Barbara F. Berlin now Sands) against the husband and father (Joseph G. Berlin) had culminated in a written agreement between the parties concerning the support, custody and visitation rights with respect to the children, the Circuit Court for Montgomery County granted the wife an *a vinculo* divorce from her husband and awarded custody of the children to the mother with reasonable

rights of visitation to the father in accordance with the agreement, subject, however, to the "further order" of the court.

In addition to the specific provisions concerning the rights of the father to visit the children and the duration of each visit, the parties also agreed that the mother had the privilege of removing the children from the Washington area but that the father would be immediately notified of any change in residence. Although the parties had separated and the wife had moved into the District of Columbia before the divorce proceedings were heard, it was not until after the granting of the final decree that the mother moved to New York and took the children with her. Later, at his request, the attorney, who had represented the wife in the divorce proceedings, was permitted to strike out his appearance.

Sometime thereafter, the father, as he had done on prior occasions when disputes had arisen between the parties with respect to the children, filed a petition to have the mother cited for contempt for denying his rights of visitation. After it was discovered that her former counsel no longer represented the mother, the father filed a motion requesting the court to require her to employ new counsel on whom service could be made and for *ex parte* relief in the meantime from the support payments. The chancellor, in granting the relief sought, directed that a copy of the motion and the order thereon be mailed to the mother in New York by registered letter. When the letter was returned as "refused," the chancellor ordered copies of the petition and motion and the orders thereon served on her personally. The affidavit of service certifies that this was done, but the mother, despite the exigency of the orders of court, did not respond.

Subsequently, the father, alleging that the mother had failed to comply with the order of the lower court to employ new counsel and had continued to deprive him of his visitation rights, filed another petition in which, besides seeking to have the mother adjudged in contempt of court, sought to have custody of the children awarded to him. In a show cause order on this petition, the chancellor granted the relief prayed for unless cause to the contrary was shown on or before a specified date, and a copy of the petition and show cause order was directed to be

served upon or mailed to the mother, but as before, she did not respond. Whereupon, she was adjudged to be in contempt of court and the sheriff of the county was ordered to take custody of the children pending an investigation by the county probation department with respect to the requested change in custody.

The chancellor, after considering the report of the probation department, found that it would be in the best interests and welfare of the children to award custody to the father and signed an order to that effect. The mother subsequently petitioned the chancellor to set aside and vacate the order changing custody, but the lower court, on the theory that, having awarded custody subject to further order, it had a continuing jurisdiction to modify the custody provisions in the divorce decree and that its jurisdiction had not been defeated by the removal of the children from the State, dismissed the petition of the mother.

Three contentions are made on appeal: (i) that the dismissal of the petition to set aside and vacate the order modifying the custodial award was improper because the lower court lacked jurisdiction; (ii) that the mother was denied procedural due process because she had not been given adequate notice of the proceeding; and (iii) that the lower court erred in changing the award of custody under the circumstances of this case.

(i)

The general rule in this and other states is that the domicile of a minor child, in case his parents are divorced, is that of the parent to whom legal custody has been awarded. *Rethorst v. Rethorst*, 214 Md. 1, 133 A. 2d 101 (1957); *Ross v. Pick*, 199 Md. 341, 86 A. 2d 463 (1952). But in this case, the real question, where the children were residing in another state and not personally before the court at the time the original award of custody was changed, is whether the lower court had power to modify the award. We think it did.

Code (1964 Cum. Supp.), Art. 16, § 66, besides conferring original jurisdiction on courts of equity in all cases relating to the custody of children, gives such courts the power to modify a decree or order passed by it with respect to the custody of such children. That a court of equity lacks authority to award

permanent custody of children but has the power to exercise a continuing jurisdiction over their custody was clearly manifested by the decision in *Alston v. Thomas,* 161 Md. 617, 158 Atl. 24 (1932). See also *Pitts v. Pitts,* 181 Md. 182, 29 A. 2d 300 (1942). While the mother recognizes the continuing jurisdiction of a court of equity over children who are the subject of its custodial awards, she insists that there can be no retention of jurisdiction over children who, although once domiciliaries of this State, have since become domiciliaries of another state.[1] The mother would therefore have us apply the theory that since custody affects the status of the children a court of a state where the children are residing should be the one to exercise jurisdiction over them. We do not agree. Rather, we think that the lower court, instead of losing jurisdiction over the custody of the children, had a continuing jurisdiction to modify the custodial award which was not ousted by the removal of the children from Maryland.

Although we recognized the domicile rule set forth in the Restatement, *Conflict of Laws,* § 117, in *Naylor v. Naylor,* 217 Md. 615, 143 A. 2d 604 (1958) and in *Zouck v. Zouck,* 204 Md. 285, 104 A. 2d 573 (1954), we were not concerned in either of those cases, as we are here, with the modification of an award of custody made by a court which by its decree (pursuant to statute) had reserved the right to make further orders. Where we have said that jurisdiction to determine custody de-

---

1. In support of her position, the mother relies on the Restatement, Conflict of Laws, § 117, in which it is stated that a state can exercise jurisdiction to determine custody of children only if the domicile of the children is within the state, and on 2 Beale, Conflict of Laws, § 144.3, where it is said that removal from a state by the custodian with the child "would seem to give the second state jurisdiction over the custody, and put an end to the jurisdiction of the first state." Both the Restatement rule and the Beale statement have been criticized. See Stansbury, Custody and Maintenance Law Across State Lines, 10 Law and Contemporary Problems 819, and Sampsell v. Superior Court, 197 P. 2d 739. See also Stumberg, The Status of Children In The Conflict of Laws, 8 U. of Chi. L. Rev. 42, in which the writer concludes that "technical concepts of jurisdiction based on domicil and upon theoretical interest by a state in its own domiciliaries [is] far removed from problems of child welfare."

pends on the domicile of the child we were concerned with the power of the court to award custody in the first place.

The majority of courts in other states have adopted the continuing jurisdiction rule. We shall do likewise. The theory of this rule is that when a custody decree is subject to subsequent modification for any reason (either under the provisions of a statute or the terms of the decree itself), the jurisdiction of the court in the awarding state should remain notwithstanding the removal of the child to another state.

Most courts have applied the rule to situations where the parent to whom custody was awarded moves with the children out of the state having original jurisdiction while the other parent, who has visitation rights, remains a resident of the awarding state. See, for example, *Hersey v. Hersey,* 171 N. E. 815 (Mass. 1930); *Tinker v. Tinker,* 290 Pac. 185 (Okl. 1930); *Kern v. Lindsey,* 30 S. E. 2d 707 (Va. 1944); *Sampsell v. Superior Court,* 197 P. 2d 739 (Cal. 1948); and other cases collected in 4 A.L.R. 2d 7. In *Hersey,* where the mother had moved with the child from Massachusetts to Maine without the consent of the awarding court and the father thereafter sought modification of the custody award, it was held that since the decree was a continuing one, the removal of the child did not terminate the jurisdiction of the awarding court. In *Tinker,* where the father subsequently sought custody of the child, it was held that the mother could not defeat the continuing jurisdiction of the awarding court to modify its decree by removing from Oklahoma to Missouri and taking the child with her. In *Kern,* where the father sought a change in custody when the mother left the child with the maternal grandmother in South Carolina and went to live with her second husband in Florida, the Supreme Court of Appeals of Virginia, although leaving custody in the mother, affirmed the modification of the award so as to allow the father visitation rights on the theory that the award was interlocutory in character and subject to change in the interest and welfare of the child. And in *Sampsell,* where the parent's domicile had been changed from California to Utah, apparently to defeat the jurisdiction of the awarding court, it was held that the California court could not be divested of the jurisdiction it had originally acquired when the child was domiciled in California.

Other courts have applied the continuing jurisidiction rule irrespective of the residence of the parent seeking a change in the custodial award. In *Morrill v. Morrill,* 77 Atl. 1 (Conn. 1910), where the father was a resident of New York at the time of the divorce and was still a resident of that state at the time he sought modification of the custody decree, the awarding court was held to have a continuing jurisdiction to modify its original decree even though the mother and child were residing out of the country. In *Hentz v. Hentz,* 123 N. W. 2d 757 (Mich. 1963), where the children were awarded to the father, who took them to Illinois and established a domicile therein, and the mother became domiciled in Texas, the Supreme Court of Michigan—although denying the petition of the mother because she had not shown that the best interests of the children would be served by a change in custody, and despite the claim of the father that the awarding court had no further jurisdiction over the children—held that the lower court had a continuing jurisdiction that could not be terminated by the removal of the children from the state. Other cases, although turning on the question of whether the custody decree of another state should be given full faith and credit, have either expressly or implicitly recognized that the jurisdiction of the awarding court is a continuing one. See *Bohn v. Rhoades,* 121 So. 2d 777 (Fla. 1960) and *Ferster v. Ferster,* 138 S. E. 2d 674 (Ga. 1964). In the latter case, where the circumstances were similar to those in the case at bar, the Supreme Court of Georgia, in reversing the lower court, stated, at p. 677, that "the law and the evidence demanded that the father be given all the children [whose custody had been awarded to him by a Maryland court], and it was error to rule otherwise."

In New York, where the children who are the subject of this appeal are presently residing, and where the statute relating to the modification of a custody award is similar to ours, the courts of that state in at least two cases have held contrary to what the mother is asking for in this case. In *Grenier v. Grenier,* 23 N. Y. S. 2d 594 (1940) and in *Church v. Church,* 201 N. Y. S. 2d 312 (1960), it was held that once a party invokes the jurisdiction of a New York court for the purpose of obtaining a custody decree, its jurisdiction continues despite the removal of the party to another state.

Apart from a statute allowing modification of an award, reason dictates that a party, who has availed himself of the judicial processes of a state to obtain custody of a child, should not, by removing to another state and taking the child with him, be able to defeat the power of the awarding court to redetermine the best interests and welfare of the child whenever it is appropriate to do so. Where, as here, the mother had invoked the jurisdiction of the lower court and, pursuant to the agreement of the parents, was awarded custody of the children, with the approval of the court, on the condition that the father should have the right to visit the children at reasonable intervals, but thereafter, without the approval of the court and the consent of the father who is still a resident of this State, removed the children out of the agreed area they were to reside in, and, besides disregarding the visitation rights of the father, exhibited contempt for the lawful orders of the awarding court, we think the refusal of that court to set aside and vacate its order transferring custody of the children from the mother to the father, as it had reserved the right to do, was not improper, and we so hold.

## (ii)

The contention of the mother that she was denied due process of law, based as it is on the erroneous allegation that she was not given adequate notice of the change of custody, is without merit. The record shows that she was personally served with copies of all pertinent motions and petitions and the orders passed thereon after she had refused to accept service of them by mail. That she was given notice and an opportunity to be heard is further evidenced by the fact that she caused new Maryland counsel to appear for her (as she had been previously commanded to do), after she was served with a copy of the order of court awarding custody of the children to the father. Clearly there was no denial of due process.

## (iii)

While the final contention that it was error to change the award of custody under the circumstances of this case was not raised below, the record indicates that the mother had deprived the father of his rights of visitation for a substantial period of

time and the evidence shows that he is a fit and proper person to have custody of the children. But regardless of this, and although we shall affirm the order of the chancellor modifying the original decree, we further point out that the mother is not foreclosed from seeking the right to visit the children or, when appropriate, reapplying for their custody.

*Order affirmed; the appellant to pay the costs.*