474 A.2d 925

**Karen Lea KERNS**

v.

**Eugene J. KERNS, Jr.**

**No. 1016, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

May 9, 1984.

88

William F. Renahan, Lanham, with whom were Renahan & Walsh, Lanham, on brief, for appellant.

Kenneth A. Isen, Riverdale, with whom were Weatherly, Schiszik & Isen, Riverdale, on brief, for appellee.

Argued before BISHOP, GARRITY and BLOOM, JJ.

BLOOM, Judge.

■ The present appeal requires us to address a heretofore unanswered question, *i.e.*, does a chancellor in a contested child custody proceeding have the authority to award joint custody of the children to both parents? We conclude that a chancellor does have such authority. We also conclude that the chancellor in the instant case did not abuse his discretion in making such an award.

Karen Lea Kerns, appellant, and Eugene J. Kerns, Jr., appellee, were married on December 5, 1970. Their marriage produced two children, Michael Joseph, born on June

13, 1971, and Kristina Marie, born on September 26, 1975. Although there is some dispute as to the circumstances leading to and surrounding the parties' separation, it is clear that they did separate on November 24, 1979, when appellant, together with the two children, left the marital home.

What followed the separation can best be characterized as a bitter, intense, and sometimes violent struggle over control of the custody and lives of the children. For the first three months following the separation, both children lived with appellant. Appellee believed that appellant was unreasonably restricting his access to the children. Appellee went to appellant's house, ostensibly to visit the children, but drove away with them and took them to live with him. He then enrolled both children in a private school. Shortly thereafter, appellant forcibly removed Kristina from the school. From the time of that incident until the chancellor's order of joint custody, Kristina resided with appellant and Michael resided with appellee.

Following the separation, the parties embarked upon a long period of procedural maneuvering which included a bill of complaint for divorce, a counter-bill for divorce and various petitions for modification of custody orders. By consent, temporary custody of Kristina was awarded to appellant and similar custody of Michael was awarded to appellee. The relationship between the parties remained acrimonious, and there were attempts by appellee to regain custody of Kristina by force. The friction that existed between the parties was further evidenced by fisticuffs that occurred on Easter 1982 between appellee and appellant's paramour. Furthermore, there were allegations that appellant changed addresses and phone numbers without contacting appellee, thereby depriving appellee of contact with Kristina. Just as appellee complained about his difficulty in seeing Kristina, appellant likewise was dissatisfied with the amount of time she was permitted to be with Michael.

The battle for the children came to an adjudicatory show-down on March 11 and 12, 1982, in a trial on the cross bills of complaint for divorce *a vinculo matrimonii* filed by both parties. The Circuit Court for Prince George's County granted the divorce on the ground of the parties' three year separation. Md.Ann.Code art. 16, § 24. Since the parties had previously resolved all issues pertaining to disposition of marital property and neither party was requesting alimony, the sole issue, other than the divorce, was the custody and support of the children. The chancellor awarded custody of the children jointly to appellee and appellant. During the then current school year, Kristina would continue to reside with appellant and Michael would remain with appellee. Thereafter, both children would reside with appellee. The decree set forth a detailed visitation schedule, intended to afford "liberal and reasonable" visitation rights to appellant. In this appeal from that decree, appellant asserts:

I.  The court is without authority to make an award of joint custody and abuses its discretion in making such an award when it is not requested or consented to by the parties.

II.  Assuming arguendo that the court had the authority to award joint custody in the absence of the request or consent of the parties, the award of joint custody was inappropriate in this case.

III.  The appellee has failed to demonstrate a change of circumstances necessary to justify a transfer of custody.

I.  *Chancellor's authority to grant joint custody*

Appellant argues that, while there is no case law directly addressing the subject, Md.Ann.Code art. 72A, § 1 "seems to preclude an award of joint custody." Appellant points to the portion of that statute which provides: "Where the parents live apart, *the court may award the guardianship of the child to either of them,* but, in any custody proceeding, neither parent shall be given preference solely because of his or her sex" (emphasis added). Appellant argues that

the emphasized portion of the statute requires the court to award custody to one of the parents but not both of them. We disagree. While it is arguable that the emphasized portion requires the court to make a choice between the parents, such an interpretation ignores the remainder of the sentence which forbids any preferences based solely on the parent's sex. "Read as a whole, the sentence deals with whether a parent's sex should be relevant when both are requesting custody, not with joint versus sole custody." Ester, *Maryland Custody Law—Fully Committed to the Child's Best Interests?*, 41 Md.L.Rev. 225, 252 (1982). Furthermore, we note that the section provides that the court *may* award the guardianship of the child to either parent; it does not provide that the court *shall* award guardianship to either parent. Adopting language from an opinion of the Attorney General, we refuse to hold "that such a provision—designed to *permit* a court, in its discretion, to *deprive* one or another parent of all right to custody—should be read to preclude a court, under appropriate circumstances, from approving an arrangement that instead is designed to *preserve* both parents' right to continued custody." *Opinion*, No. 83–024, n. 1 (June 2, 1983) [*to be published at 68 Opinions of the Attorney General—*(1983)].

Our interpretation of art. 72A, § 1 is supported by other provisions in that statute which declare that the father and mother are the joint natural guardians of their child and are jointly and severally charged with the responsibility of raising the child. Thus, "[a] decree that awards 'joint custody' to both parents clearly is consistent with this legislative declaration that parents are—and should be treated as—'joint natural guardians.' " Ester, *supra,* at 253 (footnote omitted).

Notwithstanding the apparent statutory authorization of joint custody awards, appellant urges that prior case law, from both the Court of Appeals and this court, indicates a judicial disapproval of joint custody awards. In *McCann v. McCann*, 167 Md. 167, 173 A. 7 (1934), the original divorce decree awarded the care and custody of the minor child to

the mother. Dissatisfied with his opportunities to visit the child, the father sought and obtained a modification of the custody aspect of the decree. The modified decree gave custody of the child during the school year to the mother and custody of the child during the summer to the father. Both parents were given visitation rights for the periods of time in which they were not in custody. The Court of Appeals reversed the modified decree, noting that "[t]he minor is a girl and of tender years, and for her care, instruction, rearing, and protection needs, especially at the present stage of her life, the mother more than her father." *Id.* at 171, 173 A. 7. The Court further noted that the mother lived in a comfortable house in the country and had access to public education and sufficient religious instruction. The father, on the other hand, had no fixed address and his job required his absence from the child during the day. The Court also observed that a father "cannot fill the place of a mother in the upbringing of a daughter ...." *Id.* Therefore, the Court held "that the chancellor was mistaken in his decree dividing the custody of the child between the father and the mother." *Id.* The Court also observed that "the decree was open to the objection that it divided the control of the child, which is to be avoided, whenever possible, as an evil fruitful in the destruction of discipline, in the creation of distrust, and in the production of mental distress in the child." *Id.* at 171–172, 173 A. 7. Appellant contends that that statement indicates a judicial "distaste for joint custody ...."

Again, we disagree with appellant's assessment. While the statement appears to disapprove of the concept of *split* custody, it cannot be read as a blanket rejection of *joint* custody. Instead, it merely warns of the difficulties that are inherent in periodically shifting custody back and forth between the parents. In any event, the statement was nothing more than dicta. The reversal of the modified decree was based on the Court's holding that "the welfare of this girl of eight years will be best advanced and assured

by awarding her care and custody to the mother [1] ...," *id.* at 172, 173 A.7, not on a ruling that split (much less joint) custody is never a permissible remedy. Likewise, the statement in *Maddox v. Maddox,* 174 Md. 470, 477, 199 A. 507 (1938), that it is not "wise to impair the authority and control of the custodian by dividing it with a parent whose place has been taken by the custodian," is not of precedential value. In *Maddox,* the issue before the Court was not the legitimacy of a joint custody award but, rather, the propriety of a modified decree which took custody away from the paternal grandmother and gave it to an institution.

The other case cited by appellant, *McAndrew v. McAndrew,* 39 Md.App. 1, 382 A.2d 1081 (1978), is also not dispositive of the issue. Appellant argues that *McAndrew* stands for the proposition that there can never be a tie in a custody proceeding and, therefore, that the court must choose, as custodian of the child, one of the parents. In *McAndrew,* we held that the maternal preference in custody cases had been abolished by art. 72A, § 1 and, therefore, could not be used as a tie breaker. In that case, as in *McCann* and *Maddox,* the legitimacy of joint custody was not at issue.

Finally, appellant points to the failure of the General Assembly, during the 1983 Session, to pass a bill which would have authorized awards of joint custody. House Bill No. 1116 and Senate Bill No. 663 both sought to amend Md. Cts. & Jud.Proc.Code Ann. § 3–602 by adding the following language:

> The Court may award shared or joint custody of a child when determined that it would be in the best interests of the child. An award of joint custody shall be made when requested by both parties to that proceeding, unless the

---

**1.** *McCann v. McCann,* of course, was decided prior to the adoption of the Equal Rights Amendment to the Maryland Constitution and the passage of art. 72A, § 1 abolishing the "maternal preference" rule in child custody cases.

Court expressly determines that it would not be in the best interests of the child.

The legislature, however, failed to pass either bill.

Appellant contends that the introduction of these bills indicates that the legislature did not believe that a chancellor, absent express statutory authorization, had authority to grant an award of joint custody. Appellant further argues that the legislature's failure to pass those bills amounts to a refusal to extend that necessary authorization and, consequently, a legislative repudiation of joint custody.

The failure to pass the bill does not, however, prevent chancellors in this state from awarding joint custody. Nor can it be interpreted as a denunciation of the concept. The motives which prompt the various members of a legislature to embark upon a particular course of action may be varied and conflicting. *See* 2A Sutherland, *Statutes and Statutory Construction*, § 48.17 (Sands 3d ed. rev. 1973). Thus, it would be unwise for us to attribute the legislature's action to a specific policy decision rejecting joint custody. Indeed, the legislature's failure to pass the bills could be attributed to factors other than opposition to the joint custody concept. For example, the legislature may have concluded that courts already had the authority to make such awards and that the bills would have been unnecessary additions to the code. Similarly, the legislature's failure to enact those bills may have resulted from a disapproval of particular provisions of those bills, *e.g.*, the mandatory language therein, rather than a disapproval of joint custody generally.

■ We hold that in Maryland a court of equity has the authority to provide for joint custody whenever such an award is determined to be in the child's best interests. The fact that the parties do not request joint custody is no limitation upon a court's authority to award it. While a request for joint custody may be a factor to be weighed by a chancellor in the sound exercise of his discretion, it is not a jurisdictional prerequisite to an award of such custody.

II.  *Chancellor's discretion in awarding joint custody*

■  This court will not disturb a chancellor's child custody determination unless that determination involves an abuse of the chancellor's discretion. *Davis v. Davis*, 280 Md. 119, 125–126, 372 A.2d 231 (1977). Appellant asserts that the chancellor in the instant case abused his discretion in awarding joint custody "because the record shows that there has been no communication and cooperation between the Appellant and Appellee for over three years. Rather, it is a history of animosity which the Chancellor sought to end by telling the parties it should end." Appellant, relying upon publications of psychiatrists,[2] argues that joint custody should never be awarded when the parents cannot communicate or cooperate with each other or when the parents are actively litigating for custody of the child. Appellant then posits that "Karen and Eugene Kerns cannot communicate. The Chancellor sought to remedy that problem by decreeing that they communicate. Karen and Eugene Kerns actively litigated for custody of their children. The Chancellor attempted to dispose of that situation through his joint custody decree." All custody disputes, however, by their definition, involve parents who are actively litigating for custody of the children. A conclusion that a chancellor abuses his discretion if he awards joint custody in a contested custody action is tantamount to a holding that a chancellor has no authority to award joint custody—a result which we refused to reach in Part I.

We recognize that there are policy arguments both in support of and in opposition to joint custody [*see* Miller, *Joint Custody*, 13 Fam.L.Q. 345 (1979); and *supra*, note 3], but the very existence of conflicting views on the subject illustrates the necessity for leaving the resolution of such disputes in each case to the sound judicial discretion of the

---

**2.** Committee on the Family of the Group for the Advancement of Psychiatry, *New Trends in Child Custody Determinations*, 1980, at 141. Gardner, *Joint Custody is Not for Everyone*, 5 Fam.Advoc. 7, No. 2 (1982).

chancellor. While appellant points to expert authorities who oppose joint custody in situations which are arguably similar to the one in this case, she did not present any evidence at trial to show that joint custody, in this particular instance, would be detrimental to the best interests of the children. "[I]t is within the sound discretion of the chancellor to award custody according to the exigencies of *each case* ...," *Davis*, 280 Md. at 125, 372 A.2d 231 (citation omitted) (emphasis added), not according to general guidelines that presuppose factors which may or may not exist in the case before him. In the instant case, the chancellor entered a decree whereby both parents are to be custodians of the children. Both parents were found to be "fit" custodians. The parents live near each other and, consequently, the order does not call for the children to be shuffled back and forth over a great distance during a short period of time. Rather, the decree calls for the parents to share both the joys and responsibilities of parenting while allowing the children to enjoy a predictable and stable living arrangement. For example, the children are to live at one location during the school year and, therefore, there should be no disruption in their educations. In fact, the joint custody decree in this case closely resembles more traditional custody awards whereby the children live primarily with one parent with the other parent having liberal visitation privileges. Here, however, appellant was afforded some measure of control over major decisions affecting the welfare of the children that she would not have if sole custody had been awarded to appellee and she had merely been granted visitation rights. For these reasons, we hold that the chancellor did not abuse his discretion in awarding joint custody.

### III. *Transfer of custody*

■ Appellant's final argument is that the chancellor, in awarding joint custody, transferred custody of Kristina from appellant to appellee. Appellant contends that a chancellor should not grant a change in custody unless the moving party shows a change of circumstances and that in

the instant case there was no showing of a change of circumstance. Therefore, appellant argues, the chancellor erred in ordering the change in custody of Kristina.

"The custody of children should not be disturbed unless there is some strong reason affecting the welfare of the child." *Sartoph v. Sartoph,* 31 Md.App. 58, 66, 354 A.2d 467 (1976) (footnote omitted); *see also, Krebs v. Krebs,* 255 Md. 264, 257 A.2d 428 (1969); and *Winter v. Crowley,* 231 Md. 323, 190 A.2d 87 (1963). Those cases, of course, concern changes of custody after the court had already adjudicated the matter. Here, however, there was no change in the permanent custody of the children. While it is true that Kristina had been in the custody of appellant, such custody was by virtue of a *temporary, pendente lite* order to remain effective only until there could be a final adjudication of the custody dispute. There was no need for appellee to show a change of circumstances.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLEE.