482 A.2d 164

**Judith Ann TAYLOR**

v.

**Neil R. TAYLOR, III.**

**No. 40, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Oct. 10, 1984.

Bruce A. Kaufman, Baltimore, with whom were Thomas D. Wolfe and Miller, Rosenthal & Kaufman, P.A., Baltimore, on the brief, for appellant.

Cynthia Malament, Rockville (Nancy D. Polikoff, of counsel) for amicus curiae, Women's Legal Defense Fund.

Ronald M. Naditch, Annapolis, for appellee.

Argued before LISS, WILNER and BELL, JJ.

LISS, Judge.

Appellant, Judith Ann Taylor, and appellee, Neil Randall Taylor, III, were married on November 26, 1977. The parties had two children as a result of the marriage, Christina Lee Taylor, born April 9, 1979, and Neil Randall Taylor, IV, born August 5, 1980.

Appellant is employed part time by the Cecil County Board of Education as a second grade teacher. The appellee is employed full time by the Cecil County Board of Education as a health and physical education teacher.

On September 29, 1982, the appellee filed a bill of complaint in the Circuit Court for Cecil County, alleging adultery and abandonment and requesting, among other relief, that he be granted a divorce *a vinculo matrimonii* and temporary and permanent custody of the minor children of the parties. On November 3, 1982, the appellant filed an answer to the bill of complaint in which she requested

immediate custody of the minor children both *pendente lite* and permanently. On December 7, 1982, the presiding chancellor signed a *pendente lite* order granting what he regarded as *joint* custody of the minor children of the parties. In fact, the children were to reside with the appellee in the family home with appellant having liberal visitation rights.

On April 12, 1983, appellant filed an amended and supplemental answer to the bill of complaint and a show cause order in which she requested, among other things, that the order dated December 7, 1982, be stricken and that she be awarded the sole care and custody of the minor children of the parties, both temporary and permanent. The case was tried on the merits in April of 1983. After carefully considering the testimony of all of the witnesses, the chancellor granted the appellee a divorce *a vinculo matrimonii* and ordered that the custody of the children be awarded to both parties jointly. On August 18, 1983, appellant filed a motion for reconsideration, which was denied.

Appellant then noted this appeal, raising the following issues for determination by this Court:

1. Whether the trial court erred because it did not have jurisdiction to grant joint custody?

2. Assuming, *arguendo*, that the trial court had jurisdiction to award joint custody, did the court abuse its discretion in so doing?

### 1. and 2.

In his written opinion the chancellor indicated that he perceived the principal issue before him was whether the best interest of the children would be served by awarding custody to the mother, or the father, or to "continue the present arrangement which is a sort of joint custody agreed upon by the parents in November, 1982." Because of the continuing indiscretion of the appellant the chancellor found that she was not at the time of the issuance of his decree an appropriate candidate for exclusive custody of the children.

On the basis of the evidence before him the chancellor found the father not to be a candidate for exclusive custody.

On the basis of these conclusions the chancellor awarded joint custody, which we concede to be unusual but in view of all the circumstances we do not find to be arbitrary or unreasonable. This is particularly true in the light of the circumstances that he adopted a plan which "the parties had reached prior to the trial of the case on its merits."

The chancellor found as follows:

Both parents teach school. The father's work day is from about 8:30 A.M. to 4:15 P.M. and the mother's 12:30 P.M. to 4:15 P.M. The father is 32 and the mother 27. The mother confessed adultery in July 1982 and left the family in September 1982. The father would, but the mother will not, reconcile. In November 1982 the parties agreed upon a sort of joint custody of the children. Their base is in the father's home but the mother probably sees them more of their waking hours. The mother is in the home with the children Monday to Friday from 7:30 A.M. to 12:30 P.M. The mother has the children in her home from 4:15 P.M. to 8:00 P.M. Tuesday and on alternate weeks from 10:00 A.M. Saturday until 8:00 P.M. Sunday. The paternal grandmother babysits Monday to Friday from 12:30 P.M. to 4:15 P.M., i.e. from the time the mother leaves the children until the father gets home. The father pays his mother $29.00 weekly. The mother contributes no money for child support.

The chancellor concluded that under the circumstances the custody arrangement previously worked out between the parties would not be disturbed.

In this appeal appellant now attacks the chancellor's decree and opinion on the basis that the trial judge erred because he did not have the power to grant joint custody. To support this contention appellant cites the only case decided by the Court of Appeals involving the issue of joint custody, *McCann v. McCann*, 167 Md. 167, 172, 173 A. 7 (1934), which stated that joint custody "is to be avoided,

whenever possible, as an evil fruitful in the destruction of discipline, in the creation of distrust, and in the production of mental distress in the child."

We note, however, that *McCann* was decided half a century ago. The question now being asked in this appeal is, does a court in a contested child custody proceeding have the *authority* to award joint custody of the children to both parents? This Court has already answered the question in the affirmative in the case of *Kerns v. Kerns*, 59 Md.App. 87, 474 A.2d 925 (1984).

In order to understand fully the *Kerns* decision, a definition of joint custody must be provided.[1] "Joint custody, as commonly understood in the field of Family Law, is an arrangement in which (1) the parents share equally the authority and responsibility for making decisions that significantly affect the welfare of their child and (2) the child lives with each of them on an equal or split time basis." Ester, *Maryland Custody Law—Fully Committed to the Child's Best Interests?*, 41 Md.L.Rev. 225 (1982). A decree awarding "joint custody" recognizes both parents as the "custodians" of the child in the sense that they are both actively responsible for the welfare of the child.

In determining its jurisdiction to award joint custody, the court looked to Maryland Code (1957, 1983 Repl.Vol.) Art. 72A, § 1 which provides in relevant part:

The father and mother are the joint natural guardians of their child under eighteen years of age and are jointly

---

**1.** Appellant contends that the courts have confused "joint custody" with "split custody." Unlike "joint custody," "split custody" involves the "splitting" of two or more children between the two claimants in a custody dispute. Ester, *Maryland Custody Law—Fully Committed to the Child's Best Interests?* 41 Md.L.Rev. 225 (1982). In *Kerns,* the trial court declared that both children would reside with the appellee with liberal and reasonable visitation rights afforded to the appellant. The court did not provide that the split custody arrangement existing before trial would continue temporarily for the then current school year. However, thereafter both parents would share custody of both children. The joint custody decree as set forth in *Kerns* indicates clearly that the court was not confused.

and severally charged with its support, care, nurture, welfare and education. They shall have equal powers and duties, and neither parent has any right superior to the right of the other concerning the child's custody.

■ Based on this statutory provision we determined in *Kerns* at p. 91, 478 A.2d 925 that "a decree which awards 'joint custody' to both parents is clearly consistent with the legislative declaration that parents are—and should be treated as—joint natural guardians." We held that the fact that the parties do not request joint custody is no limitation on the court's authority to award it. *Kerns* at p. 94, 478 A.2d 925.[2]

Appellant contends that *Kerns* was incorrectly decided because it based its decision on the "false premise that Art. 72A, § 1 is a custody statute." She argues that the "true" custody statute is Section 3–602(a) of the Maryland Code (1974, 1984 Repl.Vol.) Courts and Judicial Proceedings Article which does not authorize an award of joint custody.

The Attorney General of Maryland in an opinion stating that Maryland Courts have the power to award joint custody gave as authority for his conclusion Art. 72A, § 1 which he held was the primary statute governing custody. Opinions of the Attorney General (1983), Opinion No. 83–024.

■ We have no difficulty in concluding that an award of joint custody is permissible under the applicable statutory provisions. Article 72A, when read in conjunction with Maryland Code, Courts and Judicial Proceedings Article, § 3–602 and Maryland Code (1957, 1981 Repl.Vol.) Art. 16, § 25 makes it clear that the court may "[d]irect who shall have custody or guardianship of a child" and that an agreement between parents concerning custody may be enforced by a court either with or without modification,

---

**2.** We caution, however, that an award of "joint custody" may be inappropriate unless the chancellor is convinced that the persons to whom "joint custody" is awarded are sincerely dedicated to and able to execute the "joint custody" in the best interest of the children.

depending upon whether the court concludes that modification is necessary to protect the child's best interests. We find nothing in any of the statutes cited which supports appellant's view that an award of joint custody is expressly or inferentially prohibited. To the contrary, the statutes, when read together convince us that a Maryland court has the authority to award joint custody, and should do so if such an award is in the child's best interests. Ester, *supra* at p. 253.

■ Finally, the law is clear that once a custody determination has been made it may not be disturbed unless there has been a clear abuse of discretion. *Davis v. Davis*, 280 Md. 119, 372 A.2d 231 (1971).

Appellant contends the chancellor clearly abused his discretion because there was continued animosity between the parties; that there was substantial testimony that the joint custody was detrimental to the children; and that the court erroneously relied on appellant's adulterous activity as the primary factor in denying her sole custody.

Appellant's suggestion that joint custody should never be awarded when the parents are actively litigating for custody of the children would amount to a holding that it is an abuse of discretion to award joint custody in a contested custody action. In the light of *Kerns, supra,* we are not prepared to so hold. While there was some evidence of animosity between these parties and some evidence that the existing arrangement was not working, there was contrary evidence which the court had a right to credit.

In this case the opinion of the trial court was that, given the circumstances, there was "no other plan more likely to serve the best interests of the ... children" than the existing joint custody arrangement. Concededly the break-up of the family could and did adversely affect the children. There was an abundance of evidence, however, to support the chancellor's conclusion that the award of joint custody at that point in time and subject to further order of the court was an appropriate order.

Finally, the record does not support appellant's complaint that the court relied principally upon her adulterous conduct in denying her sole custody. There was evidence that the appellant was having a "rough time" and that her life was unstable. There was evidence that under the joint custody arranged by the parties the children were happy, in good health and progressing well. It was conceded that the appellee had accepted almost full responsibility for the care of the children.

In Miller, *Joint Custody*, 13 Fam.L.Q. 345 (1979), several factors to be considered in awarding joint custody were set forth:

(1) that both parents are "fit" custodians; (2) that there is some degree of cooperation between the parties, and at least a moderate amount of mutual respect and trust; and (3) that the parents have some shared values. Important but not essential factors include: (4) Both parents must want to be joint custodians. (5) At least one parent should have a flexible work schedule. (6) If the child is to live in 2 homes, they should not provide him or her with extremely different physical environments; and (7) one home should not be too far from the other. (8) If joint custody will create additional expenses, the parents should be able to afford the increased costs. (9) The number of children involved and their ages *may* be important.

In the light of the record in this case, the law applicable and the criteria here enumerated, we find no abuse of discretion in the chancellor's award of joint custody at the time it was made and shall affirm.

We note that the joint custody arrangement has now been in effect for several years. If, as contended by the appellant, the children have suffered as a result of this arrangement, it would be appropriate, we believe, for the appellant to seek a modification of the chancellor's original decree. Such an action would undoubtedly result in a request by the chancellor that an appropriate in-depth investigation by the

appropriate authorities of the State be made with a recommendation as to the future custody arrangement which they believe would be in the children's best interests.

DECREE AFFIRMED, COSTS TO BE PAID BY APPELLANT.