494 A.2d 737

Larry S. OLSON

v.

Kathleen W. OLSON.

No. 1438, Sept. Term, 1984.

Court of Special Appeals of Maryland.

July 8, 1985.

156

---

Karen H. Abrams, Leonardtown, for appellant.

Oliver Guyther, Leonardtown, for appellee.

Argued before GARRITY, ADKINS and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

In this appeal, we decide whether the court erred in dismissing the father's petition for custody and support of the minor children based on lack of subject-matter jurisdiction.

Kathleen W. Olson and Larry S. Olson were married in Hapeville, Georgia, in 1970. Two children were born of the marriage. The parties were divorced by the Family Court for the County of Newport, Rhode Island, on July 26, 1979.

The Olsons entered into a Property Settlement Agreement in February 1979 which, among other things, addressed child custody, support and visitation. It further provided that "the matter of the support, maintenance and custody of said minor children shall be determined by the Family Court of the State of Rhode Island, which shall continue to reatin [sic] jurisdiction over such matters, including the power to modify the same...."

The Rhode Island divorce decree provided, in pertinent part, that "[t]he parties shall retain joint custody of the children ... with the [father] retaining physical custody." It was silent, however, concerning visitation and support. The court neither incorporated the settlement agreement by reference, nor merged it into the decree.

Mr. Olson moved to St. Mary's County, Maryland, in September 1979, bringing both children with him. Mrs. Olson continued to reside in Rhode Island. For the past five years, the children have spent four consecutive weeks each summer with their mother. They would visit her either in Rhode Island, or in Norfolk, Virginia where Mrs. Olson's mother resides.

In June 1984, Mrs. Olson took the children to Virginia. She had planned to keep them for five weeks but returned them to their father at the end of three weeks. At the beginning of August, she took them back to Virginia. Af-

ter several days, she called Mr. Olson to inform him that she was taking the children to Rhode Island for the remainder of the summer.

Mr. Olson asked his former wife to agree in writing that she would return them to Maryland before school began in September. When she refused to do so, he became concerned that she was planning to keep them with her indefinitely. His concern stemmed from the following facts: she had never before requested as much visitation; she had become increasingly hostile to him; and she had been having conversations with one of the children about living with her in Rhode Island.

The Circuit Court for St. Mary's County issued an injunction prohibiting Mrs. Olson from removing the children from Maryland and it ordered the sheriff to obtain physical custody of them and deliver them to their father. The injunction further provided that Mrs. Olson be restricted to visiting the children in the home of their father. Mrs. Olson was served with the injunction when she returned briefly to Maryland with the children.

At a hearing on August 20, 1984, the court took testimony on Mrs. Olson's motion to dissolve the injunction and on Mr. Olson's opposition. The chancellor found that for the past five years Mrs. Olson had four consecutive weeks of visitation with the children each summer. He dissolved the injunction and returned the visitation arrangement to the status quo.

Prior to the August 20 hearing, Mr. Olson petitioned the Circuit Court for St. Mary's County to modify the Rhode Island custody decree. In his petition, he requested that Mrs. Olson "be granted liberal but specified visitation rights" and that she "be ordered to pay a reasonable amount of child support." Mrs. Olson moved to dismiss claiming that the court lacked jurisdiction. The court held no hearing but, in an order dated September 7, 1984, dismissed the claim "for lack of jurisdiction over the subject matter." Mr. Olson then noted this appeal.

## MODIFICATION OF CUSTODY

■ Jurisdiction cannot be conferred upon a court by consent of the parties. *See Clark v. Elza,* 286 Md. 208, 211–212, 406 A.2d 922 (1979); *Biro v. Schombert,* 285 Md. 290, 293, 402 A.2d 71 (1979); *Paolino v. Paolino,* 420 A.2d 830 (R.I.1980). Only the court may decide whether it has jurisdiction to proceed. *Sullivan v. Insurance Commissioner,* 291 Md. 277, 281, 434 A.2d 1024 (1981). Thus, the parties' agreement which provided that Rhode Island "shall continue to retain jurisdiction" is not controlling.

In Maryland and in forty-seven other states, including Rhode Island, interstate child custody disputes, such as the one before us, are governed by the Uniform Child Custody Jurisdiction Act (UCCJA). Haralambie, *Handling Child Custody Cases* § 9.02 (1983). The UCCJA was enacted in this State in 1975 and is codified at Md.Family Law Code Ann., § 9–201 et seq. (1984).[1]

■ We do not know the precise basis upon which the chancellor concluded that the court lacked subject-matter jurisdiction—his terse order did not explain his rationale. Nevertheless, a judge is "presumed to know the law and is presumed to have performed his duties properly." *Lapides v. Lapides,* 50 Md.App. 248, 251, 254, 437 A.2d 251 (1981) (citations omitted); *Stern v. Stern,* 58 Md.App. 280, 300–301, 473 A.2d 56 (1984). In this case, however, it is clear that there was no basis upon which he could come to the conclusion he did.

As we will explain, this proceeding is governed by Maryland's UCCJA. We will examine: (1) whether the Maryland court has jurisdiction under that statute; and (2) whether it should exercise its jurisdiction. Before doing so, however, a brief explanation of the history of the UCCJA will prove helpful.

The UCCJA was approved by the Conference of Commissioners on Uniform Laws and the American Bar Associa-

---

1. The Md.UCCJA formerly appeared as Md.Code Ann., Art. 16 § 185 et seq. The only changes, as a result of the recodification, are in style.

tion, in 1968, to counteract "the judicial trend ... toward permitting custody claimants to sue in the courts of almost any state, no matter how fleeting the contact of the child and family was with the particular state...." Uniform Child Custody Act, 9 U.L.A. Commissioners' Prefatory Note at 112 (1968). That state of affairs came about as a result of a series of Supreme Court opinions which left open the question of whether the full faith and credit clause of the Constitution applied to custody decrees. *Id.; see May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *New York ex. rel. Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). At the time, many states gave little or no effect to custody decrees of sister states; the matter of custody, therefore, could be successfully litigated in a number of different states, with each court considering the matter *de novo.* 9 U.L.A. Commissioners' Prefatory Note at 113; *Pratt v. Pratt,* 431 A.2d 405, 407 (R.I.1981). As the Commissioners indicated in their introductory note to the UCCJA:

"There is growing public concern over the fact that thousands of children are shifted from state to state and from one family to another every year while their parents or other persons battle over their custody in the courts of several states ... It is well known that those who lose a court battle over custody are often unwilling to accept the judgment of the court. They will remove the child in an unguarded moment or fail to return him after a visit and will seek their luck in the court of a distant state where they hope to find—and often do find—a more sympathetic ear for their plea for custody. The party deprived of the child may then resort to similar tactics to recover the child and this "game" may continue for years, with the child thrown back and forth from state to state, never coming to rest in one single home and in one community."

9 U.L.A. at 111–112.

The UCCJA establishes criteria for the exercise of jurisdiction in child custody disputes, § 9–204(a); provides for

the recognition and enforcement of out-of-state decrees, § 9–213; and sets forth the guidelines for modifying a custody decree of another state, § 9–214(a). Even when a Maryland court determines that it has the power to modify an out-of-state decree, it may decline to do so if it determines that another state is a more appropriate forum, § 9–207. In addition, it must decline to do so: (1) if the petitioner has improperly removed the child from the physical custody of the person entitled to it without that person's consent, § 9–208(b); or (2) if a proceeding was pending in a court of another state concerning the custody of the child when the petition was filed, § 9–206(a).

### Maryland's Jurisdiction

Appellant maintains that the court erred in dismissing his petition because Maryland is the children's "home state" and their "connections with Rhode Island have been all but dissolved...."

Md. Family Law Code Ann., § 9–204(a), *supra*, sets forth four grounds upon which a Maryland court has jurisdiction to make a custody determination by initial decree or modification decree. It provides that

"A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:

"(1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceedings and the child is absent from this State because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this State;

"(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least 1 contestant, have a significant connection with this State, and (ii) there is

available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(3) the child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

"(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with items (1), (2), or (3) of this subsection or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction." [2]

■ As a general rule, the child's "home state" should be the jurisdiction to hear and determine custody issues. *Hegler v. Hegler*, 383 So.2d 1134, 1136 (Fla.1980). *See* 9 U.L.A. Commissioners' Note § 3, *supra*. Home state is defined as

"[T]he state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period."

Md.Family Law Code Ann., § 9–201(f), *supra*. If, however, "there is no home state or the child and his family have

---

**2.** Each of the four jurisdictional standards in the Uniform Child Custody Act, 9 U.L.A. § 3, *supra*, is followed by an "or". Md.Family Law Code Ann. § 9–204(a), *supra*, contains an "or" only at the end of the penultimate item. This difference is one of style. It was not intended to change the substance of the provision. Commission to Revise the Annotated Code, *Style Manual of the Commission to Revise the Annotated Code of Maryland and the Maryland Revisor of Statutes* 82 (1983).

equal or stronger ties with another state, a court in that state has jurisdiction". 9 U.L.A. Commissioners' Note § 3 at 123.

■ The evidence shows that the children have lived with appellant in Maryland for the past five years. Their only regular periods of absence from this State have been for approximately four weeks each summer when they visit appellee in either Rhode Island or Virginia. We hold that the Maryland court has jurisdiction under the UCCJA as the children's "home state". Md.Family Law Code Ann., § 9–204(a)(1), *supra*. Our inquiry does not end here, however, because we must further determine whether Maryland is precluded from exercising jurisdiction by § 9–206(a) or § 9–208(b) of the Act.

Section 9–206(a) provides that

"[A] court of this State shall not exercise its jurisdiction under this subtitle if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subtitle, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons."

Section 9–208(b) provides that

"Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. . . ."

In his petition, appellant averred that "there are no other custody proceedings concerning these children pending in a court of this or any other state." Furthermore, there has not been any information to the contrary brought to the attention of this Court. The circuit court, therefore, is not

barred from exercising its jurisdiction by Md.Family Law Code Ann., § 9–206(a), *supra.*

Nor is this a case in which appellant seeks the assistance of the Maryland courts to legitimize improper conduct on his part. In fact, appellant initially sought injunctive relief to deter appellee from unilaterally removing the children from his custody. Thus, Maryland would not be required to decline jurisdiction under Md.Family Law Code Ann., § 9–208(b), *supra.*

Finally, we must determine whether the court is barred from exercising jurisdiction by Md.Family Law Code Ann., § 9–214(a), which provides that

"If a court of another state has made a custody decree, a court of this State shall not modify that decree unless (1) it appears to the court of this State that the court that rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this subtitle or has declined to assume jurisdiction to modify the decree and (2) the court of this State has jurisdiction."

■ Maryland can only exercise jurisdiction to modify the Rhode Island decree if that state has lost or declined its pre-existing jurisdiction. *McCarron v. District Court,* 671 P.2d 953 (Colo.1983); *Terrill v. Terrill,* 431 A.2d 1194, 1197 (R.I.1981); *Bull v. Bull,* 109 Mich.App. 328, 311 N.W.2d 768, 772 (1981); *Grubs v. Ross,* 291 Or. 263, 630 P.2d 353, 359 (1981); *Slidell v. Valentine,* 298 N.W.2d 599, 602 (Iowa 1980).

### *Rhode Island's Jurisdiction*

The only basis upon which appellee contends that Rhode Island continues to have jurisdiction is under R.I.Gen.Laws § 15–14–4(2). She asserts that she and the children have a "significant connection" with that state because: (1) the initial decree was rendered there; (2) she continues to reside there; (3) the children visit her regularly in Rhode Island "for long periods of time"; and (4) "[i]t was the father's

unilateral action in moving to Maryland that established the Maryland connections...." She makes no allegations concerning the availability of substantial evidence in Rhode Island concerning the children's present or future care, protection, training, or personal relationships.

 Rhode Island enacted the UCCJA in 1978. The Rhode Island statute is substantially similar to the Maryland provisions. In fact, R.I.Gen.Laws § 15–14–4(2), *supra*, upon which appellee relies, is identical to Md.Family Law Code Ann., § 9–204(a)(2), *supra*. But, in determining whether or not Rhode Island has lost its pre-existing jurisdiction, in accordance with Md.Family Law Code Ann., § 9–214(a), *supra*, we must apply the Maryland jurisdictional standards.

Section 9–204(a)(2) provides that a court has jurisdiction over an initial or modification decree "in the best interest of the child" if

1. the child and at least one contestant have a significant connection with this State; and

2. Substantial evidence is available in this State concerning the child's present or future care, protection, training, and personal relationships.

*Id.*

The purpose of Section 9–204(a)(2), *supra*, is to limit jurisdiction, not proliferate it. 9 U.L.A. Commissioners' Note § 3 at 124; *McCarron v. District Court*, 671 P.2d at 957. Moreover, "[t]here must be maximum rather than minimum contacts with the state" for jurisdiction to exist on that basis. *Id.* Finally, the standard embodied in that section "perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes ..." of the statute. *Id.* One of the major purposes of the UCCJA is to

"assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care,

protection, training, and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and the child's family have a closer connection with another state...."

In determining whether Rhode Island continues to have jurisdiction under Md.Family Law Code Ann., § 9–204(a), *supra,* we must examine appellee's and the children's contacts with that state when appellant filed his petition to modify custody. *Bull v. Bull,* 311 N.W.2d at 772–773; *Pierce v. Pierce,* 287 N.W.2d 879, 882 (Iowa 1980). On August 17, 1984, when appellant filed that petition, appellee continued to reside in Rhode Island, but the children had been living in Maryland for almost five years.

■ Appellee mentions a number of facts which she claims support her assertion that the children continue to have a "significant connection" with Rhode Island. Only one of these—that they visit her there regularly "for long periods"—supports her argument at all. We note, however, that even this assertion is not borne out by the evidence. The uncontradicted evidence shows that the children visit her for four consecutive weeks each summer in either Rhode Island *or* Norfolk, Virginia. Such visits alone do not create the kind of "significant connection" required for a Rhode Island court to continue to have jurisdiction. Md. Family Law Code Ann., § 9–204(a)(2), *supra; see Slidell v. Valentine,* 298 N.W.2d at 604.

Moreover, the children's contacts with Rhode Island are not rendered "significant" by virtue of the fact that the parties were awarded "joint custody". In Maryland, "joint custody" is defined as

" 'an arrangement in which (1) the parents share equally the authority and responsibility for making decisions that significantly affect the welfare of their child and (2) the child lives with each of them on an equal or split time basis.' "

*Taylor v. Taylor,* 60 Md.App. 268, 273, 482 A.2d 164 (1984), quoting Ester, *Maryland Custody Law—Fully Committed*

*to the Child's Best Interests?*, 41 Md.L.Rev. 225 (1982). We do not know what either the court or the parties meant by "joint custody"—neither one explained what the arrangement involved. Thus, we cannot say whether this is joint custody under Maryland law.

Finally, we note that in Maryland, a Rhode Island court continues to have jurisdiction based upon "the best interest of the child" only if there is a "significant connection" with one contestant and the children *and* significant evidence is available in that state concerning the children's present or future needs. Md.Family Law Code Ann., § 9–204(a)(2), *supra*. In this case, appellee has neither demonstrated that Rhode Island has a significant connection with the children, nor has she introduced any evidence, let alone substantial evidence, concerning their "present or future care, protection, training, and personal relationships." *Id.* Under these circumstances, we hold that, according to Maryland law, Rhode Island has lost its pre-existing jurisdiction. *Id.*

Appellee further asserts that Rhode Island continues to have jurisdiction because this State "follows [the] 'continuing jurisdiction rule' ".

Prior to the enactment of the UCCJA, Maryland did follow the continuing jurisdictional rule. *Berlin v. Berlin*, 239 Md. 52, 56–57, 210 A.2d 380 (1956). Under that rule, a court would continue to have jurisdiction over the custody of the children even after they were removed from this State. *Id.* Typically, it was applied to assert jurisdiction when the custodial parent moved with the children to another state and the other parent with visitation rights remained in the state which rendered the decree. *Id.*

In *Howard v. Gish*, 36 Md.App. 446, 373 A.2d 1280 (1977), this Court recognized that the rule of continuing jurisdiction no longer applies in the same way under the uniform act. As we stated in *Gish*, and reaffirm today, "the cases indicating Maryland's adherence to the 'continuing jurisdictional rule' are, to the extent of any inconsistency with the

statute, no longer controlling authorities." *Id.* at 450, 373 A.2d 1280.[3]

We, therefore, hold that Maryland has jurisdiction under the UCCJA. Md.Family Law Code Ann., § 9–204(a)(1), *supra,* and that Rhode Island "does not now have jurisdiction...." Md.Family Law Code Ann., § 9–214(a), *supra.*[4]

## VISITATION

■ Appellant's petition to modify custody included a prayer that appellee "be granted liberal but specified visitation rights with" the children. The UCCJA applies to proceedings involving custody as well as visitation. Md. Family Law Code Ann., § 9–201(c), *supra.*

We have already held that, in this case, the court has jurisdiction, Md.Family Law Code Ann., § 9–204(a)(1), *supra,* and that it is not precluded from exercising its jurisdiction. In addition, the Rhode Island decree did not address visitation. That issue, therefore, was before the Maryland court as part of its original jurisdiction. We hold that the court should have decided the question of visitation and must do so on remand.

## SUPPORT

■ Appellant's petition further requested that appellee "be ordered to pay a reasonable amount of child support...." The UCCJA does not govern decisions "relating to child support or any other monetary obligation of any person." Md.Family Law Code Ann., § 9–201(c)(2), *supra.* In any event, the Rhode Island decree was silent concerning child support; therefore, that issue also came before the court under its original jurisdiction. We hold that it had

---

3. We note that the courts of New Jersey and Illinois have cited this holding with approval. *L.F. v. G.W.F.,* 183 N.J.Super. 195, 443 A.2d 751, 755 (1982); *Siegel v. Siegel,* 84 Ill.2d 212, 49 Ill.Dec. 298, 417 N.E.2d 1312, 1316 (1981).

4. Neither party has raised the issue of forum non conveniens. Md. Family Law Code Ann., § 9–207, *supra.*

jurisdiction of that matter under Md.Family Law Code Ann., § 1–201, *supra,* and that the court erred in finding otherwise.

In summary, the court has jurisdiction to modify the custody decree. Md.Family Law Code Ann., § 9–214(a), *supra.* Additionally, the court has original jurisdiction over visitation, Md.Family Law Code Ann., § 9–204(a)(1), *supra,* and child support. Md.Family Law Code Ann., § 1–201, *supra.* Finally, there is no basis upon which the Maryland court must decline to exercise its jurisdiction. Md.Family Law Code Ann., §§ 9–206, 9–208, *supra.*

JUDGMENT REVERSED.

CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.