JEANNE SCHWARTZ *v.* GEORGE M. SCHWARTZ

[No. 905, September Term, 1974.]

*Decided May 29, 1975.*

The cause was argued before MORTON, GILBERT and LOWE, JJ.

*Robert Anthony Jacques* for appellant.

*Robert R. Michael,* with whom were *Alan D. Massengill* and *Massengill & Michael* and *William John Mason* on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

Conflicts among courts of the States cannot be avoided when litigants are jurisdictional nomads. The parties here were married in Florida wherein they lived together as husband and wife. Presumably, the matrimonial sea was either too calm or too turbulent for after eight years they were divorced in that State. Apparently the divorce did not erase the affection each had for the other. They continued to live together in the same home, and while their marriage was not blessed with a child, their subsequent relationship was. Two years after their divorce their child was born.

Since each of the proceedings we are about to detail dealt with custody, an *in rem* action, the jurisdiction of the hearing court depended in the first instance on the domicile of the child. *Renwick v. Renwick,* 24 Md. App. 277, 284. The Court of Appeals has held that a child's domicile is that of the parent with legal custody, *Taylor v. Taylor,* 246 Md. 616, 618-619; *accord, Seidlitz v. Seidlitz,* 23 Md. App. 327, 336. After issuing a decree, however, the rendering court retains jurisdiction to modify its decree, even though the domicile of the child may then be elsewhere. *Berlin v. Berlin,* 239 Md. 52. With these principles in mind, we proceed to describe the multitude of litigation to which this child has been subjected.

The child was five years old before Mrs. Schwartz chose to leave her Florida domicile. She went to her parents' home in Bethesda, Maryland. Soon thereafter, with the help of private detectives, she obtained physical custody of the child contrary to an oral understanding with Mr. Schwartz. Mrs. Schwartz then sought and received temporary custody in the Circuit Court for Montgomery County. Assuming that Mrs. Schwartz was at that time domiciled in Maryland,[1] the court

---

1. We do not consider whether Mrs. Schwartz's two year stay in Maryland met the requisites of domicile because the issue was never raised nor treated below.

had jurisdiction to render the custody decree. *Taylor, supra.* Over a year of unpleasantness ensued including contempt hearings regarding alleged violations of visitation privileges.

Mrs. Schwartz then moved out of state. Although she denied that her attorney was not apprised of her whereabouts, no one seemed to know that she had taken up residence in California. Thus, when the Maryland court heard a petition for contempt filed by Mr. Schwartz, Mrs. Schwartz was not physically present, although her attorney and her parents were. The hearing judge transferred temporary custody to Mr. Schwartz. Even though at this point Mrs. Schwartz and the child were living in California, the Maryland court, having rendered the initial custody decree, had jurisdiction to modify the decree to give Mr. Schwartz temporary custody under the continuing jurisdiction doctrine. *Berlin, supra,* 239 Md. 52. Mr. Schwartz, himself, engaged private detectives to find mother and child and through their efforts, physically took custody of the child and returned with her to his Florida home where he promptly petitioned the Florida court for permanent custody and other relief.

Having commenced those proceedings in Florida where he lived, which was thereby the legal residence of his child, *Taylor, supra,* 246 Md. 616, Mr. Schwartz did not personally reappear in Maryland when Mrs. Schwartz apparently returned here and petitioned the Montgomery County court for restoration of custody. Mr. Schwartz's motion to dismiss that proceeding filed by his counsel was denied and the Maryland chancellor awarded temporary custody back to Mrs. Schwartz. Again, the Maryland court had jurisdiction to modify its decree under the continuing jurisdiction doctrine. *Berlin, supra,* 239 Md. 52.

When Mrs. Schwartz and her own private detectives were physically unable to remove the child from Florida, Mrs. Schwartz filed a Writ of Habeas Corpus there, based on her Maryland decree. The Florida court consolidated Mrs. Schwartz's writ petition with Mr. Schwartz's custody petition without objection and proceeded with a full custodial hearing which resulted in custody of the child

being awarded to her father on October 2, 1973. No appeal was entered.[2] Mrs. Schwartz's Maryland proceeding and Mr. Schwartz's Florida proceeding were practically simultaneous, although the Florida decree was last issued. Both courts had jurisdiction to hear the custody proceeding; Maryland under the continuing jurisdiction doctrine, *Berlin, supra,* 239 Md. 52, Florida because the child was domiciled there, *Renwick, supra,* 24 Md. App. 277.

Under the liberal visitation provisions of that Florida decree the child visited her mother in California for a week at the end of 1973 and arranged for a six week visit the following summer in accordance with the decree. On this occasion, however, the child was not returned to her father. Unbeknown to him, Mrs. Schwartz had taken her back to her parents' home in Bethesda.

Mr. Schwartz filed a petition for Writ of Habeas Corpus which Writ was signed by Judge Ralph G. Shure, who upon the voluntary appearance of mother and child and assurance of subsequent appearance under oath, assigned the issue for hearing before Judge H. Ralph Miller. Following that evidentiary hearing, Judge Miller signed an order affirming Judge Shure's Writ and directing the delivery of the child to Mr. Schwartz, thereby extending "full faith and credit" to the Florida decree. Mrs. Schwartz appeals that ruling by asserting lack of jurisdiction in the Florida court. She claims now that neither she nor the minor child were domiciled in Florida and further that she appeared for the limited purpose of implementing the Maryland decree.

The record reflects that at the time the Florida jurisdiction was invoked the child was in the custody of her father whose residence is and was throughout, Florida. Furthermore, by petitioning the Maryland courts to *restore* custody to her, Mrs. Schwartz impliedly admitted that her husband had lawful custody. As we have previously noted, the domicile of the child — determinative of custody jurisdiction, *Renwick, supra,* 24 Md. App. 277 — follows that of the parent with legal custody, *Taylor,* 246 Md. at 618-619.

---

2. The entire Florida proceedings were admitted into evidence below.

The Florida court therefore had jurisdiction, albeit concurrent with Maryland's continuing jurisdiction. Since a custody decree is "conclusive of the status of the child *at the time* the decree was rendered" *Rethorst v. Rethorst*, 214 Md. 1, 13, [emphasis added] custody provisions may change as circumstances change, and the latest decree, *viz.*, Florida, must control.

We have treated the merits of the jurisdiction question even though we need not have. The chancellor below found as a fact that Mrs. Schwartz had appeared generally in the Florida proceeding. The test by which that finding of fact must be reviewed is set forth in Md. Rule 1086, the clearly erroneous rule, *Renwick*, 24 Md. App. at 282-283, and we do not find that finding of fact to be clearly erroneous.

By participating in the Florida custody hearing, Mrs. Schwartz had a full opportunity to contest the jurisdiction of the Florida court. If she raised that issue and disagreed with the chancellor's decision, her remedy was to appeal, a remedy which she did not pursue. It matters not whether she actually litigated the jurisdictional issue there, only that she had the opportunity to do so. Considering the same issue in the analogous situation of a divorce proceeding, the Supreme Court held:

> "[T]he requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister state where there has been participation by a defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues . . . ."
>
> ". . .If respondent failed to take advantage of the opportunities afforded him, the responsibility is his own. We do not believe that the dreliction of a defendant under such circumstances should be permitted to provide a basis for subsequent attack in the courts of a sister state on a decree valid in the State in which it was rendered." *Sherrer v. Sherrer*, 334 U. S. 343, 351-352; *accord, Day v. Day*, 237 Md. 229, 234.

Having had her "day in court" on the jurisdictional issue, Mrs. Schwartz is barred by res judicata from now collaterally attacking the Florida judgment. *Rethorst*, 214 Md. at 13. The Florida decree is entitled to full faith and credit.

We found the opinion of the chancellor below cogently expressed our reactions to this case. After setting forth the factual background, he explained:

> "There is a writ of *habeas corpus* in which the petitioner, the defendant, asked to have full faith and credit extended to the final decree of Florida State, based on concurrent jurisdiction and that being the latest decree; and the Court will have to decide the question whether that decree is entitled to have full faith and credit, because there is some allegation that the plaintiff wife went to Florida only to enforce her Maryland decree.
>
> The Court will take into consideration, also, that the Florida decree is the only decree of this Court, excepting the first *pendente lite* order to the wife, where the parties were ever really both before the court to litigate their problems.
>
> The Court is not at all happy about what has occurred in this case, particularly with regard to the plaintiff, Mrs. Schwartz. I am not happy, either, with Mr. Schwartz, who did not appear for the custody hearing here. But the home investigation was done on the basis of the California home, and the next thing I know, there is litigation going on in another State and then the wife is back here with her parents.
>
> This child cannot be dragged all over the United States, and I think that the parties did just what was right; and I am not at all convinced by the wife's testimony that at the time she did not believe that, also. They got together and they litigated the matter, and obviously she is unhappy with the result. There is not any doubt in my mind that she

initially went down to Florida simply to enforce her Maryland decree; but the exhibits seem patently clear to me, that once down there they resolved their differences and decided to let that court decide the issue of custody.

I am keeping in mind that this was the first time that had really occurred. It is a later decree, and the Court holds that the Florida court clearly had jurisdiction, concurrent jurisdiction with this State and that it was not just a simple matter of enforcing the Maryland decree.

. . .

The fact that [Mrs. Schwartz] did not agree with the Florida attorney is no matter of defense. The Florida decree was passed when both parties were before the court and when, quite obviously from the exhibits, a statement was made by the judge in his decree — and it was based on the testimony and participation of the parties — that they wanted to lay to rest forever their troubles. That is just exactly what they did.

It being a later decree, the Court extends full faith and credit to the decree of the State of Florida. The writ of *habeas corpus* issued on August the 22nd, 1974, is hereby affirmed."

We affirm the action of the chancellor.

*Judgment affirmed.*
*Costs to be paid by appellant.*