## MOHAMED ZAMALUDIN *v.* BIBI HALIMA ISHOOF

[No. 500, September Term, 1979.]

*Decided January 11, 1980.*

The cause was argued before MOORE, COUCH and WEANT, JJ.

*James J. Cromwell* and *Jeffrey VanGrack,* with whom were *Spriggs, Cromwell, Myers, Nicholson & Spire, P.A.* on the brief, for appellant.

*John B. Dunn,* with whom were *Schultz & Dunn, Chartered* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

The appellee, Bibi Halima Ishoof, filed a bill of complaint for custody and child support against her former husband, Mohamed Zamaludin, the appellant, in the Circuit Court for Montgomery County. Appellant initially filed a motion to dismiss on the ground that the court did not have jurisdiction because of a previous divorce proceeding in the District of Columbia between the parties. The court subsequently granted this motion to the extent that the custody prayer was dismissed as the court concluded it lacked jurisdiction pursuant to the "Uniform Child Custody Jurisdiction Act" [1]; the court concluded, however, that it had jurisdiction over the issue of child support and therefore denied the motion as to that issue. The matter was thereafter heard fully as to the issues of support and attorney fees, resulting in a ruling by the chancellor in favor of appellee on both issues. In this appeal appellant presents the following questions for our consideration:

"1. Did the Chancellor err in failing to dismiss the Bill of Complaint for lack of jurisdiction in light of the previous adjudication in the District of Columbia between the parties?

2. Did the Chancellor err in finding that the Appellant had not rebutted the presumption that the child was presumed to be the legitimate child of both parents pursuant to Section 1-206 of the Estates & Trusts Article of the Maryland Annotated Code?

3. Did the Chancellor err in failing to apply the judicially noticed normal period of human gestation of Two Hundred and Eighty (280) days in light of no medical testimony to the contrary?

---

1. Art. 16, Sec. 184 *et seq.,* Annotated Code of Maryland.

4. Did the Chancellor err in awarding support in excess of Ten Thousand Dollars ($10,000.00) per annum, basing that upon a finding that the Appellant was responsible for supporting the child so that she can live and attend private school in the United States?

5. Did the Chancellor err in awarding excessive attorney fees and costs of Five Thousand Seven Hundred and Fifty Dollars ($5,750.00)? "

(1)

Appellant's first contention, and actually a threshold question, is that the chancellor erred in not granting his motion to dismiss based on lack of jurisdiction. The substance of appellant's argument is that the District of Columbia court, having acquired jurisdiction over the parties in the prior divorce action, retained that jurisdiction not only on issues relating to the divorce but also as to issues relating to custody, care and maintenance. It is further argued that Maryland follows the "continuing jurisdiction rule". *See Berlin v. Berlin,* 239 Md. 52, 210 A.2d 380 (1960). We have no quarrel with this general statement but, in our view, this is not dispositive of the question presented here. The real question is whether there may be concurrent jurisdiction in the District of Columbia court and the Maryland court; we think there can be. There can be no argument but that personal jurisdiction over appellant exists; he lives in Montgomery County and was properly served. Appellant concedes this but argues the court lacked subject matter jurisdiction, apparently based on the fact that the child in question was not residing or domiciled in Maryland.

Appellee argues that the trial court had not only personal jurisdiction over appellant, but also subject matter jurisdiction pursuant to Sec. 3-602, *Cts. & Judicial Proc. Art.,* Annotated Code of Maryland (1974), which provides:

"A court of equity has jurisdiction over the custody, guardianship, maintenance, and support of a child . . . ."

The precise question presented here, *i.e.,* does the court have to have jurisdiction originally over the child before it may pass an order for its support, has not been answered in Maryland, so we have been advised by counsel and our own research does not disclose otherwise.

We have had occasion in the past to deal with related but not similar cases. In *Seidlitz v. Seidlitz,* 23 Md. App. 327, 327 A.2d 779 (1974), we were confronted with an appeal from an order dismissing a petition in part for modification of a District of Columbia divorce decree as to alimony, child support and visitation rights. In affirming the action of the chancellor, we said:

> "The equity courts of Maryland have jurisdiction over the custody, guardianship, maintenance, and support of children, and a court may from time to time modify its decree or order concerning a child.
>
> * * *
>
> Before it may exercise this authority, however, the Maryland court must have jurisdiction over the children."

*Id.* at 335. We also held in that case that the *"continuing* jurisdiction which a Maryland court has over matters relating to children must stem from an earlier proceeding in which the Maryland court had and exercised that jurisdiction. It is, in other words, the power which a Maryland court has to modify *its* decree or order. On the other hand, a *later acquired* power in a Maryland court to modify a decree or order of another state relating to children exists only when the Maryland court has jurisdiction over the children because they are presently domiciled here." It is obvious this case is of little aid in deciding the present question because there was no custody or support issue decided by the District of Columbia order.

In *Renwick v. Renwick,* 24 Md. App. 277, 330 A.2d 488 (1974), again we dealt with a prior award of custody by a sister state and concluded the Maryland court had no jurisdiction to modify that decree because the children were

not subject to the court's jurisdiction. In *Furman v. Gladding,* 36 Md. App. 574, 374 A.2d 414 (1977), we held that the parties (to a divorce case wherein custody of a child was awarded to the mother by a Maryland court), "once having been subject to the court's jurisdiction for purposes of determining custody and child support ... remained subject to such jurisdiction for the purposes of modifying any decree or order which affected the child." In two cases we have held that two or more states may have jurisdiction to grant, deny, or change custody of children, and jurisdiction of each state is not only determined by its own laws but subject to the Constitution and laws of the United States. *See Sami v. Sami,* 29 Md. App. 161, 347 A.2d 888 (1975) and *Schwartz v. Schwartz,* 26 Md. App. 427, 338 A.2d 386 (1975).

We do not believe the Uniform Child Custody Jurisdiction Act (Art. 16, Sec. 184 *et seq.,* Annotated Code of Maryland) is applicable to this case because, by its definition, "decisions relating to child support or any other monetary obligation of any person" are excluded from custody determinations.

In our view, logic seems to dictate that those reasons for requiring the presence in the court's jurisdiction of the child in custody matters do not exist in simple support cases where, obviously, the critical issues are not the same. The best interests of the child in support matters can easily be determined whether the child is within or without the court's jurisdiction. Accordingly, we conclude that the Circuit Court for Montgomery County had jurisdiction, not only over appellant but over the subject matter as well, and thus did not err in exercising it.

## (2) and (3)

Appellant further contends the chancellor erred in concluding he had not rebutted the presumption of legitimacy as found in Sec. 1-206 of the Estates and Trusts Article of the Maryland Code and by failing to apply the judicially noticed normal period of human gestation of 280 days in light of no medical testimony to the contrary.

The chancellor, in his written memorandum and order, in pertinent part, stated:

"The question of legitimacy must be determined under the provisions of Title 1 of the Estates and Trusts Article. *Id.* The parties were married on March 26, 1963; Malika was born on September 28, 1963; and the parties were divorced on August 25, 1966. The child, thus, was born during the marriage. Under § 1-206, Estates and Trusts Article, Annotated Code of Maryland (1974), she is presumed to be the legitimate child of both the Plaintiff and the Defendant.

The presumption that Malika is the legitimate child of Dr. Zamaludin is rebuttable, § 1-105 (b), Estates and Trust Art., Annotated Code of Maryland (1974). Evidence contrary to such a presumption raises a question of fact for the trier to decide. The presumption is rebutted, however, only if the contrary evidence is of greater persuasion than that having given rise to the presumption and that presented in the case in support of the presumption. *Border v. Grooms,* 267 Md. 100 (1972); *Rose and Crown, Ltd. v. Shaw Enterprises, Inc.,* 28 Md. App. 548 (1975).

The Defendant's evidence was sufficient to raise a question of fact in the case at bar. Dr. Zamaludin testified that he did not have sexual intercourse with Mrs. Ishoof from November, 1962, until February 5, 1963 — the period of time during which Malika was probably conceived. Seibert v. State, 133 Md. 309 (1918). The doctor's brother, Fazil Deen, testified that he had seen the Plaintiff engaged in social activities with another man about Christmas time, 1962. Finally, Anita Wierdu testified that Mrs. Ishoof admitted at a party in 1970 that Dr. Zamaludin was not the child's father.

The Plaintiff, however, in her case in chief and in

cross-examination of the Defendant's witnesses presented sufficient evidence for this Court to conclude that the presumption was not rebutted. Mrs. Ishoof testified that she had never had sexual intercourse with anyone but the Defendant before the birth of Malika. She testified that she had had intercourse with Dr. Zamaludin on almost every weekend during the fall of 1962 until December 14th. Both individuals were going to school in the United States at that time. Her relations with him resumed, she said, at the beginning of January, 1963, when she returned to the United States after spending Christmas vacation in Guyana. The sexual relations continued on almost every weekend through March, 1963. She also testified that the other man with whom she had been seen in Guyana during her Christmas vacation was simply a friend of the family.

In addition, there were in evidence documentary admissions by Dr. Zamaludin that Malika was his child. He asserted that fact in a verified pleading filed in the District of Columbia divorce proceeding between the parties. He also told the Plaintiff's parents that the child was his in a letter to them dated March 16, 1964.

The Court has doubts as to the credibility of the defense witnesses, too. It seems unlikely that Mrs. Ishoof and Dr. Zamaludin had sexual intercourse regularly during the autumn of 1962 until Thanksgiving, abstained between then and February, 1963, and then resumed having relations. This version of what happened is particularly troublesome in light of Dr. Zamaludin's admission that he visited the Plaintiff during the alleged period of abstention. As for Anita Wierdu's testimony, it was difficult to believe, too. She admitted that she only knew Mrs. Ishoof from the party in 1970 and that she had not known Dr. Zamaludin at that time.

In fact, she testified that she did not meet him until some years after the party. Yet, she claimed to remember accurately her conversation of more than seven years ago that she had had with the Plaintiff about the Defendant.

In light of the evidence presented and the fact that Malika was born while the parties were married, the Court concludes that Malika Zamaludin is the legitimate child of the Defendant."

We find no merit to appellant's argument that the chancellor erred in failing to apply the judicially noticed period of gestation when there was no medical testimony. Whatever may be the rule elsewhere, we find no Maryland case supporting this argument. To the contrary, *see Harward v. Harward,* 173 Md. 339, 196 A. 318 (1938). Whether *Harward* is still viable today need not be reached here as we believe the chancellor, in any event, had to make a factual finding, which he proceeded to do. In our view the testimony of appellee, in addition to the documentary evidence containing admissions of paternity by appellant, if believed, was sufficient to warrant the chancellor in reaching the factual conclusion he did. We do not find the chancellor to have been clearly erroneous as required by *Md. R.* 1086.

### (4)

Appellant's penultimate argument concerns the amount of support awarded by the chancellor. The court concluded that appellant should pay for the child's tuition at a private school in Florida and $750.00 per month support during the school term and $300.00 per month during the summer months when school was out. Appellant seems to argue that support monies should not be awarded in order to send a child to private school. We find no merit to this argument. Appellee, through her brief and at oral argument, has advised this Court that this question is moot since the child is enrolled in a Florida public school and expects to graduate in May, 1980; it would appear there is no intention to enroll the child in a private

school and thus that portion of the chancellor's order regarding child support that is in contest is not given life. In any event, we have reviewed the record and do not find the chancellor to have been clearly erroneous in the award he made, keeping in mind the financial status of the parties and their station in life.

(5)

Appellant's final argument concerns the amount of attorney's fee allowed by the chancellor; it is contended that the chancellor abused his discretion by allowing a fee of $5,750.00. We see no merit to this contention. The record demonstrates that although a schedule of services totaling $8,631.91 was submitted to the court after the trial was completed, appellant made no objection either to this procedure or to the bill itself during the nearly two months thereafter before the chancellor rendered his Memorandum and Order. We also note the chancellor did not allow the full amount of the bill but made a substantial reduction to $5,750.00. We see no abuse of discretion. *See Deckman v. Deckman,* 15 Md. App. 553, 292 A.2d 112 (1972).

Finally, appellee has submitted to us a motion for allowance of appellate counsel fees in the amount of $9,163.00. We grant the motion so far as allowing a fee for the preparation and presentation of this matter on appeal but only in the amount of $2,500.00.

> *Order affirmed.*
> *Costs to be paid by appellant.*
> *Appellant to pay $2,500.00 as contribution toward appellee's counsel fee.*