32 A.3d 511

**Mabel Y. APENYO**

v.

**Kofi APENYO.**

**No. 1461, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Dec. 2, 2011.

**402**

John H. Doud, III, Baltimore, MD, for Appellant.

Jill H. Breslau (Thyden, Gross & Callahan, LLP, on the brief), Chevy Chase, MD, Appellee.

Panel: JAMES R. EYLER, WRIGHT, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

MOYLAN, J.

As Judge Lowe philosophized for this Court in *Schwartz v. Schwartz*, 26 Md.App. 427, 428, 338 A.2d 386 (1975), "Conflicts among courts of the States cannot be avoided when litigants are jurisdictional nomads." A perennial problem with jurisdictional nomads is that they inevitably produce jurisdictional collisions. It is to avoid such collisions that we invoke what is at best loosely referred to as "comity." In *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895), the Supreme Court discussed its essential meaning:

> Although the phrase has been often criticized, no satisfactory substitute has been suggested.

> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due

regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Black's Law Dictionary* (6th ed. 1990) 267 defines "comity" as:

the principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect.

Far from being a precise legal precept, comity is essentially a flexible philosophical approach or psychological attitude that must adapt itself to the varying configurations of at least a dozen significantly different types of jurisdictional collision. This case is one of them.

The appellant, Mabel Apenyo ("Wife"), appeals from the ruling of Judge Angela M. Eaves in the Circuit Court for Harford County, dismissing her complaint for divorce. The single contention raised is that Judge Eaves abused her discretion by granting the motion of the appellee, Kofi Apenyo ("Husband"), to dismiss his Wife's complaint.

## An Immigrant Family's History

The Husband and the Wife are both natives of Ghana. They were married in Ghana on April 30, 1995. Two children were born to the marriage: Tsikata, born on October 5, 1995, in Ghana; and Dede, born on October 2, 1999, also in Ghana. The Husband and Wife, with the children, moved to Harford County, Maryland in 2002. The daughter, Dede, however, now 12 years of age, was, after only a year in the United States, sent back to Ghana to live with relatives in 2003. Both the Husband and the Wife became naturalized United States citizens. By 2009, the marriage had deteriorated, and on July 1, 2009, the Husband returned to Ghana, taking with him his son, Tsikata, now 16 years of age.

## Counterpunching Divorce and Custody Petitions

The return of the Husband to Ghana while his Wife remained in the United States ultimately produced two separate

divorce actions, each with an accompanying petition for child custody, five thousand miles and 28 days apart. On August 31, 2009, the Husband filed in a circuit court in Ghana his petition for a divorce and for the custody of both children. While the Wife was in Ghana shortly thereafter because of the death of her father, she was served with a copy of the Husband's divorce petition. On September 3, 2009, counsel for the Wife filed a Notice of Appearance in the Ghana court, and, on September 6, 2009, filed on the Wife's behalf her motion to have the divorce petition dismissed on the ground that the Ghana court had no jurisdiction over the matter. In a seven-page ruling filed on April 15, 2010, the Ghana court found as a matter of fact that the Husband intended to make Ghana his permanent home and that it was, therefore, his official domicile.

"In the present case, even though the Petitioner/Respondent and the wife had lived for sometime outside their domicile of origin, *the Petitioner* by a series of overt acts, *has exercised his right of choice of domicile, by relocating to Ghana, with his two children with the intention of making Ghana,* and for that matter Kpando which was once his domicile of origin *as his domicile by choice. The conduct [of] leaving his job, bringing down to Ghana his only two children, putting them in school, and also abandoning his living apartment in the U.S. after shipping out of that country his personal belongings, [we] can reasonably conclude that the Petitioner/respondent herein intends to make Ghana his birth place, a permanent home.* In that event, his present action before this Court is in conformity with the requirements of the provisions of Act 367 of 1971."

(Emphasis supplied). The Wife's Motion to Dismiss the divorce action was, accordingly, denied. Thus, divorce and custody petition # 1.

The Wife, upon her return to Harford County, on September 28, 2009, filed in the Circuit Court for that County her petition seeking a divorce from the Husband and also asking for the custody of both children. The Husband was served in

Ghana on October 28, 2009 with a copy of that petition. Thus, divorce and custody petition # 2.

## Dismissing the Later Claim

On March 26, 2010, the Husband filed in Harford County his Motion to Dismiss the Wife's divorce complaint on the ground that his earlier filed divorce complaint was then pending in the courts of Ghana and took precedence over the later filed petition. On July 26, 2010, Judge Eaves, upon the Wife's request, conducted a hearing on the motion. The Wife's petition for divorce was dismissed, and this appeal challenges that dismissal.

## An Editorial Prologue

At the outset of this discussion, let us make one thing absolutely clear. This Court is not the attorney for the Wife. We have no intention, therefore, of engaging in a wide-ranging examination of two partially overlapping but very complicated jurisdictional inquiries—one involving divorce cases and the other involving child custody cases. We are not going to raise on behalf of the Wife every conceivable issue that might plausibly have been raised and then to answer those hypothetical challenges one by one. We will respond to the precise arguments expressly made in the Wife's brief or at the hearing conducted on July 26, 2010 and go no further.

## The Appellant's Brief

Six pages of the Wife's nine-page appellate brief are directed to her single undifferentiated contention:

The Chancellor abused her discretion in granting Defendant's Motion to Dismiss.

Of these six pages, fully two of them are devoted to an issue that has nothing to do with this case. The Wife treats the Husband's Motion to Dismiss as if it were a Motion to Dismiss pursuant to Maryland Rule of Procedure 2–322(b)(2), based upon the failure to state a claim. What was before Judge Eaves, by contrast, was not a Motion to Dismiss for the failure to state a claim. It was a Motion to Dismiss for the totally

different reason that a similar claim had already been filed
and was then pending in another jurisdiction. That part of
the Wife's brief actually pertinent to the issue before us is
thereby reduced to four pages.

### An Immaterial Sensitivity

The consistent theme running through the rest of the
Wife's brief is her obsessive sensitivity to her Husband's
service of process upon her during her short trip to Ghana. It
was he who first informed her that her father was dying.
That information, however, was sadly true, whatever the Hus-
band's purpose may have been in communicating it. The
father was, indeed, dying. A copy of the Husband's divorce
complaint against her was served on the Wife as she left the
mortuary following her father's death.

The Wife now asserts that the "egregious circumstances" of
his obtaining service could, *ipso facto*, invalidate an otherwise
valid Ghana judgment: "Even if there were a Ghana judg-
ment, it would seem that it is subject to collateral attack in
Maryland under the egregious circumstances in which appel-
lee invoked the Ghana Court." A page deeper into the
argument, the Wife returns to this theme: "Maryland law
generally frowns upon underhanded means of obtaining ser-
vice." She finally disparages the Ghana court system itself as
one not entitled to comity because it countenanced the "admit-
ted conduct" of the Husband in somehow getting his case
before the Ghana court: "Indeed, the very fact that the Ghana
court would allow the Appellee to proceed in the face of the
admitted conduct that brought him to that Court implies that
it is not in conformity with Md.Code Ann. 'FL' § 9.5–208."

There is no legal merit in the contention. The behavior of
the Husband in serving process on his Wife as she stood by
her father's bier might be considered, by English cricket
standards, to be insensitive, ungallant, and unsporting, but it
is not, by American legal standards, fraudulent. *Fisher v.
McCrary Crescent City, L.L.C.*, 186 Md.App. 86, 104–08, 972
A.2d 954 (2009). The Wife, for good reason of her own, was
on the jurisdictional turf of Ghana and she was there vulnera-

ble to the service of process. To be opportunistic is not, *ipso facto*, to be fraudulent.

■ The proper place in which to litigate the adequacy of personal service in Ghana, moreover, would seem to be in the courts of Ghana. As a matter of fact, the Wife filed a motion in the Ghana court on September 6, 2009, in which she challenged the jurisdiction of the Ghana court over the case. The Ghana court, however, ruled against her. What this Court held in *Schwartz v. Schwartz*, 26 Md.App. 427, 431, 338 A.2d 386 (1975), albeit in a state versus state setting, has at least presumptive persuasive authority here:

> By participating in the Florida custody hearing, Mrs. Schwartz had a full opportunity to contest the jurisdiction of the Florida court. If she raised that issue and disagreed with the chancellor's decision, her remedy was to appeal, a remedy which she did not pursue. *It matters not whether she actually litigated the jurisdictional issue there, only that she had the opportunity to do so.*

(Emphasis supplied).

## A Juridical Amalgam

In the final four pages of the Wife's brief, we are enmeshed in a tangled skein of intertwining and overlapping considerations. Nowhere does the argument turn square corners. It drifts without warning from one issue into what may be a very distinct issue, sometimes apposite but frequently and treacherously inapposite.

Not only in the present case but in the area of jurisdictional collision generally, analysis is exceedingly difficult because the thing to be analyzed is not a single subject, but an amalgam of distinct, albeit more or less closely related, subjects. In the present case, for instance, the claim that was dismissed in Harford County was not simply a petition for divorce. It was also a petition for child custody. The rules, or guidelines, for avoiding jurisdictional collision in divorce cases are not precisely the same as those for avoiding jurisdictional collision in custody cases. The former are more generic and customary.

The latter are detailed and statutorily spelled out by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which has been the law of Maryland since October 1, 2004 and is now codified as Maryland Code, Family Law Article, §§ 9.5–101 through 9.5–318.

If the respective set of rules or guidelines should tilt in opposite directions, should a resolution of the jurisdictional question in one direction on one of the issues "trump" a resolution in the other direction on the other issue, or should we fragment the divorce trial from the custody trial, to the possibly great inconvenience of parties and witnesses and to the unquestioned detriment of judicial economy. If the former, should divorce trump custody or should custody trump divorce? In the present case, moreover, the UCCJEA might conceivably point in one direction for the custody trial of one of the children and in another direction for the custody of the other. Does that make sense? This would seem to be an area that calls for a lot of balancing and that, by definition, means it is an area calling for the exercise of judicial discretion.

Even if, however, we could totally eliminate either the divorce issue or the custody issue from the mix and deal exclusively with the other, we would still need to sort out different types of issues, one from the other. In a very loose and fluid employment of the word, the term "comity" is regularly used as the identifying label for this entire package of issues. Comity, however, has two very different applications, one post-trial and the other pre-trial. Comity with a capital "C" refers to the deference that one jurisdiction should afford to the finally litigated judgments and orders of another jurisdiction, by way of recognizing and enforcing those judgments and orders. With respect to the states of the United States, such comity is constitutionally mandated by the Full Faith and Credit Clause of Article IV, Section 1:

> "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

*See Day v. Day,* 237 Md. 229, 205 A.2d 798 (1965); *Schwartz v. Schwartz,* 26 Md.App. 427, 338 A.2d 386 (1975).

If Comity with a capital "C" refers to the recognition and enforcement by one jurisdiction of the fully and finally litigated judgments of another jurisdiction, there is also a junior varsity level of comity which is, to a large extent, a rule of jurisdictional courtesy or the recognition of an accepted order of precedence. In dealing with the subject of "Courts, VIII Concurrent and Conflicting Jurisdictions, C. Courts of Different States or Countries," § 308, 21 *Corpus Juris Secundum* describes this variety of pre-trial comity, which is essentially the courteous deference by one court to another court that has gone first.

It is well settled that the mere pendency of a prior parallel suit in one state cannot be pleaded in abatement or in bar to a subsequent suit in another state, even though both suits are between the same parties and involve the same subject matter. Likewise, the pendency of an action in a foreign country is not a bar to the institution of another action between the same parties and for the same cause of action in a state court in the United State; nor is it the duty of the state court to stay the action pending the determination of the earlier suit in the foreign country, even though the entire controversy might be disposed of there. Rather, where courts of separate sovereigns have concurrent jurisdiction, the two courts may proceed simultaneously until one court reaches judgment.

*As a matter of comity, however, the court of one state may stay or dismiss a proceeding pending before it on the ground that a case involving the same subject matter and the same parties is pending in a court of another state or foreign country.* Under the doctrine of comity, an action may be stayed until a prior parallel action in the courts of a different sovereignty is determined. Once stayed, the later action remains pending until the judgment in the prior action becomes final. A final judgment favorable to the plaintiffs in the prior action eliminates the need to proceed with the later action where the plaintiffs are the same in

both actions; in turn, a final judgment favorable to the defendant may be pleaded in bar to the later action.

(Emphasis supplied). In the case now before us, we are dealing with the latter and lesser variety of comity and not with the former.

The Wife in this case argues the virtues of Maryland as the forum primarily with respect to her divorce petition. Her argument with respect to the custody case is very secondary. The caselaw that has been cited to us by both parties presents us with four cases dealing with the issue of divorce rather than that of custody. Three of the four, however, deal with the recognition and enforcement in Maryland of foreign judgments and decrees that have already been finally litigated. *McCabe v. McCabe*, 210 Md. 308, 123 A.2d 447 (1956) (enforcement of Nevada alimony order); *Day v. Day*, 237 Md. 229, 205 A.2d 798 (1965) (the recognition of an Alabama divorce decree); *Wolff v. Wolff*, 40 Md.App. 168, 389 A.2d 413 (1978); aff'd, 285 Md. 185, 401 A.2d 479 (1979) (enforcement of English alimony order). *Aleem v. Aleem*, 175 Md.App. 663, 931 A.2d 1123 (2007), aff'd 404 Md. 404, 947 A.2d 489 (2008), deals with the question of whether a divorce action already pending in Montgomery County would have to be dismissed because of an intervening decree of divorce obtained in Pakistan (actually in the Pakistani Embassy in Washington, D.C.). None of these cases offers any significant guidance as to which of two jurisdictions, in each of which a petition of divorce is pending, should take precedence and go forward to trial.

The infinite variety of the amalgam is not yet exhausted. To what relationships between jurisdictions do these rules of comity or judicial courtesy apply? Some of the Maryland caselaw on this general subject is actually limited to the deference which the courts of one Maryland county owe to the courts of another Maryland county which has made a prior assertion of jurisdiction over the case. *State v. 91st Street Joint Venture*, 330 Md. 620, 625 A.2d 953 (1993) (neither a divorce case nor a custody case). There is also comity of the "Who shall go first?" variety between American state and American state. There is finally the somewhat different ques-

tion of comity between an American jurisdiction, such as Harford County, Maryland, and a foreign nation, such as Ghana. When comity is asked to cross an international border, moreover, there are also certain limitations that do not generally abide when examining comity between county and county or between state and state.[1] *See, e.g., Telnikoff v. Matusevitch,* 347 Md. 561, 702 A.2d 230 (1997) (neither a divorce case nor a custody case); *Wolff v. Wolff, supra* (divorce); *Aleem v. Aleem, supra* (divorce); *Garg v. Garg,* 163 Md.App. 546, 881 A.2d 1180 (2005), *rev'd on other grounds,* 393 Md. 225, 900 A.2d 739 (2006) (custody); *Malik v. Malik,* 99 Md.App. 521, 638 A.2d 1184 (1994) (custody); *Hosain v. Malik,* 108 Md.App. 284, 671 A.2d 988 (1996) (custody).

With three types of jurisdictional relationship multiplied by two levels of comity concern multiplied by two types of case (divorce and child custody), there are self-evidently twelve combinations of "comity" factors that may be brought to bear on a particular case. One should not plunge indiscriminately into this juridical grab bag without a deft hand at careful selectivity. Our point is that when caselaw is pulled out of one of these twelve pigeonholes and casually cited as authority for a problem lodged in a different pigeonhole, the applicability issue is fraught with obvious danger. In moving from one type of comity issue to another, the controlling considerations may be the same but that is not universally the case. Inappropriate doctrinal leakage is a perennial problem and watertight analysis must be carefully maintained. There is no single entity called "comity." Issues involving comity appear in a dozen configurations. Comity is a set of legal rules, but it is also a mood. The analytic imperative is: "Think plural!"

---

1. Even in the international arena, there is an at least nuanced preference for those systems "based on the common law of England," as evidenced by Maryland Code, Courts and Judicial Proceedings Article, § 10–501:

> Every court of this State shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States, *and of every other jurisdiction having a system of law based on the common law of England.*

(Emphasis supplied).

## Characteristics of the Case At Hand

The case before us involves the arguably lesser comity issue of "Who shall defer to whom?" when two competing jurisdictions break out of the starting gate at roughly the same time and not with the recognition and enforcement of finally litigated judgments. We are dealing with an international jurisdictional collision between a county of Maryland and the independent Republic of Ghana. We are dealing finally with a jurisdictional contest over the issues of both divorce and custody, not merely in a technical sense but in a case wherein each is vying for appellate center stage. The custody case, moreover, is actually two custody cases involving respective sets of circumstances that are very different.

## Abuse of Discretion Standard

■ As an international "Who shall defer?" case, the propriety of the decision will be judged, as are almost questions of which of two competing jurisdictions should be permitted to proceed with the trial of case, by the abuse of discretion standard. *Corpus Juris Secundum, op. cit.* at § 309, p. 301, explains:

> *The decision to grant a stay or to dismiss a case due to the pendency of a prior parallel proceedings in a different state or foreign country is generally within the sound discretion of the trial court. In exercising this discretion,* a variety of factors may be considered, including avoiding increased costs; preventing harassment by repeated suits involving the same subject matter; avoiding conflicting or inconsistent judgments; whether the foreign litigation is at an advanced or preliminary stage; the likelihood of obtaining complete relief in the foreign jurisdiction; and the possibility that a judgment entered in the foreign jurisdiction will give rise to collateral estoppel or will render the matter before the court res judicata.

*International comity.*

In deciding to dismiss a case on the ground of international comity, a court should normally consider whether an adequate forum exists in the objecting nation; whether the

foreign court abides by fundamental standards of procedural fairness; and whether the defendant sought to be sued in the United States forum is subject to or has consented to the assertion of jurisdiction against it in the foreign forum. (Emphasis supplied).

Albeit dealing with a jurisdictional contest between two Maryland counties, Judge Eldridge in *State v. 91st Street Joint Venture*, 330 Md. at 627–28, 625 A.2d 953, made it crystal clear that the standard of review is that of the abuse of discretion:

> The first question presented by the State and Ocean City on appeal is whether "the Circuit Court for Baltimore City improperly exercise[d] jurisdiction over a subsequently-filed action involving the same parties and the same issues" as involved in the action already filed in the Circuit Court for Worcester County. *We conclude that the Circuit Court for Baltimore City abused its discretion when it entertained the Joint Venture's action.*

(Emphasis supplied). *See also Aleem v. Aleem*, 175 Md.App. at 683, 931 A.2d 1123 (Maryland law "permitted a *discretionary refusal* to recognize a foreign country divorce on the ground that it would manifestly be contrary to public policy") (emphasis supplied); *Gestl v. Frederick*, 133 Md.App. 216, 229, 754 A.2d 1087 (2000) ("We will not disturb a trial court's decision whether or not to exercise jurisdiction unless the trial court abuses its discretion."); *Solomon v. Solomon*, 118 Md. App. 96, 108, 701 A.2d 1199 (1997) ("[W]e perceive no abuse of discretion.").

When the comity issue before a court is the specific question of which of two jurisdictions should be permitted to go forward with the trial of a case—the jurisdiction in which the complaint was first filed and is pending or the jurisdiction in which a similar complaint was subsequently filed—there are invariably some factors pointing in each direction (at the very least, the convenience and self-evident preference of one of the parties). There are multiple considerations, some of only negligible weight but some of very heavy weight. The weigh-

ing of factors and the balancing of competing considerations is quintessentially a type of decision calling for the exercise of judicial discretion. It a decision to which appellate review traditionally extends great deference.

### "Après Vous, Mon Cher Alphonse"

■ From the four pages of the Wife's brief that purport to argue the merits of the appeal, we have extricated the few and intermittent references to the divorce case from the minimally fuller argument with respect to the custody case. There is absolutely nothing to persuade us that Judge Eaves abused her discretion in dismissing the Harford County divorce complaint because a similar complaint was already pending before the court in Ghana. The several unilluminating citations to several Family Law Article sections and to two Maryland cases (both dealing with the recognition or non-recognition of finally litigated foreign judgments pursuant to the Full Faith and Credit Clause) are to statutory provisions and to holdings that are not remotely material to the issue before us.

The Wife cites to *Garg v. Garg*, 163 Md.App. 546, 576, 881 A.2d 1180 (2005), *rev'd on other grounds*, 393 Md. 225, 900 A.2d 739 (2006), as tentative authority for the proposition that Judge Eaves could have separated the disposition of the divorce case from that of the custody case, allowing the divorce action to stay in Harford County even if the custody case should properly go to *Ghana*.

The *Garg* opinion, however, is by no means authority for such a proposition. In *Garg*, to be sure, the divorce case was remanded to the circuit court because the reason the circuit court had given for dismissing it was not a valid one. Although a custody action was already pending in India when the Baltimore County petition for both custody and divorce was filed, a prior divorce action was not so pending. Hence, the reversal as to it. 163 Md.App. at 576, 881 A.2d 1180. Far from separating the divorce action from the custody action, however, the *Garg* decision also remanded the custody case to the circuit court for reconsideration, albeit for the different reason that no independent counsel for the child had been

appointed. 163 Md.App. at 577, 881 A.2d 1180. It was that holding in *Garg* that was reversed by the Court of Appeals. 393 Md. at 237–40, 900 A.2d 739. At no point, however, was this Court in *Garg* ever asked to consider whether a divorce case could, or should, go in one jurisdictional direction while an intertwined custody case was going in a different jurisdictional direction or whether better policy should treat them as related aspects of a single indivisible domestic totality. Our opinion in *Garg* neither held nor even intimated anything in that regard. Our research, indeed, does not reveal that this particular issue has ever been considered, let alone decided. It would appear, in any event, to be no more than one factor in a multi-factored and *ad hoc* balancing process.

We are fully persuaded to follow the jurisdictional deference rule articulated, albeit in a county versus county context, by Judge Eldridge in *State v. 91st Street Joint Venture*, 330 Md. at 628, 625 A.2d 953:

> It has long been the rule in this State that, *once a court takes jurisdiction over a particular subject matter, another court of concurrent jurisdiction generally should abstain from interfering with the first proceeding.*

(Emphasis supplied).

This was not simply a case wherein the divorce action was already pending in Ghana when the Harford County complaint for divorce was filed a month later. In this case, the Wife was in Ghana and was personally served in Ghana with a copy of the Husband's complaint. A Ghana attorney entered his appearance in the Ghana court on September 3, 2009 on the her behalf. Through her attorney, moreover, the Wife filed a motion in the Ghana court to have the divorce action dismissed on the ground that the Ghana court had "no jurisdiction to entertain the matter." Following an exchange of correspondence between the lawyers for both the Wife and the Husband, Ghana Circuit Court Judge Samuel Kofi Solomon postponed the hearing on the Wife's motion, at the Wife's request, from October 16, 2009 to December 15, 2009. The motion was ultimately submitted to Judge Solomon on the basis of legal

argument, supporting documents, and factual affidavits filed by both the Wife and the Husband. Judge Solomon's seven-page Opinion and Ruling, making several critical findings of fact and ultimately denying the Wife's motion to dismiss, was filed on April 15, 2010. Copies of all of these proceedings were in the file before Judge Eaves. The divorce case, accordingly, was solidly before Judge Solomon in the circuit court in Ghana.

There are other arguments that could be made in support of Judge Eaves's discretionary decision to defer, in the interests of comity, to the court in Ghana, but it is pointless to defend what has not been attacked. It is enough to note that the Wife has not persuaded us that Judge Eaves was in error in dismissing the divorce complaint in Harford County.

### Custody Case As To Tsikata

 Tsikata, the son and older child of the couple, was born in Ghana on October 5, 1995, and is now 16 years of age. After spending the first seven years of his life in Ghana, Tsikata came with his parents to Harford County in 2002 and remained there until July 1, 2009. Tsikata traveled with the Husband to Ghana on that date and has been uninterruptedly in Ghana for the last two and one half years, where he now attends the Ghanata Senior High School.

The comity rules and guidelines in custody cases largely parallel those in divorce cases except that the custody rules are more precisely pinned down by a very detailed statute. It is the Maryland Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), now codified as Family Law Article, Title 9.5, §§ 9.5–101 through 9.5–318. The UCCJEA took effect on October 1, 2004, by virtue of § 2 of Ch. 502 of the Acts of 2004. It replaced an earlier statute, the Uniform Child Custody Jurisdiction Act ("UCCJA"), which had been the controlling law in Maryland from 1975 through 2004. *See Gruber v. Gruber,* 141 Md.App. 23, 784 A.2d 583 (2001), *vacated on other grounds,* 369 Md. 540, 801 A.2d 1013 (2002); *Gestl v. Frederick,* 133 Md.App. 216, 754 A.2d 1087 (2000); *Solomon v. Solomon,* 118 Md.App. 96, 701 A.2d 1199 (1997);

*Harris v. Simmons,* 110 Md.App. 95, 676 A.2d 944 (1996); *Cronin v. Camilleri,* 101 Md.App. 699, 648 A.2d 694 (1994), *cert. denied,* 338 Md. 200, 657 A.2d 794 (1995); *Olson v. Olson,* 64 Md.App. 154, 494 A.2d 737 (1985); *Paltrow v. Paltrow,* 37 Md.App. 191, 376 A.2d 1134 (1977), *aff'd* 283 Md. 291, 388 A.2d 547 (1978).

### Custody and International Comity

The statutory provision concerning international comity in custody cases is completely in line with general comity principles. § 9.5–104(a) and (c) provide:

(a) *Foreign country treated as a state*—A court of this State shall treat a foreign country as if it were a state of the United States for the purpose of applying Subtitles 1 and 2 of this title.

. . . .

(c) *Applicability of title*—A court of the State need not apply this title if the child custody law of a foreign country violates fundamental principles of human right.

In *Garg v. Garg,* 163 Md.App. at 594–95 [881 A.2d 1180], Judge Hollander stated for this Court:

[W]e believe the plain meaning of the UCCJEA makes clear that the term 'state' applies to foreign nations, so long as the foreign custody law does not offend our public policy. Therefore, we conclude that the trial court properly determined that India is deemed a state for purposes of this custody case, so long as its child custody law does not violate 'fundamental principles of human rights.' F.L. 9.5–104(c).

*See also Wolff v. Wolff,* 40 Md.App. 168, 179, 389 A.2d 413 (1978) ("[E]quity courts have jurisdiction to enforce the alimony provisions of a foreign country decree which is subject to recognition in this State").

### Jurisdiction Over a Custody Case

It is Subtitle 2 of Title 9.5 that controls a Maryland court's jurisdiction over a custody case. When the Wife filed her

petition for the custody of Tsikata on September 28, 2009 in Harford County, Harford County had jurisdiction over the case pursuant at § 9.5–201. The critical issue was that of whether, on September 28, 2009, Maryland qualified as the "home state" of Tsikata, who as of that date had been in Ghana for 28 days. § 9.5–101(h)(1) defines "home state" as:

the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months, including any temporary absence immediately before the commencement of a child custody proceeding.

Section 9.5–201(a)(1) provides, in pertinent part:

(a) *Grounds for jurisdiction.*—Except as otherwise provided in § 9.5–204 of this subtitle, a court of this State has jurisdiction to make an initial child custody determination if:

(1) *this State ... was the home state of the child within 6 months before the commencement of the proceeding* and the child is absent from this State but a parent or person acting as a parent continues to live in his State.

(Emphasis supplied). Maryland clearly had been the "home state" of Tsikata within the six-month period prior to September 28, 2009.

### "Après Vous, Mon Cher Gaston"

That jurisdictional qualification, however, is only a threshold consideration and is not ultimately dispositive of the issue before us. *Gestl v. Frederick,* 133 Md.App. 216, 227, 754 A.2d 1087 (2000). Subtitle 2 goes on to spell out circumstances under which Maryland, even when it has threshold jurisdiction, will nonetheless decline to exercise jurisdiction for any of three different reasons: (1) pursuant to § 9.5–206, when the same proceeding is pending in another state, *Paltrow v. Paltrow,* 37 Md.App. 191, 376 A.2d 1134 (1977); (2) pursuant to § 9.5–207, when Maryland determines that it is an inconvenient forum and that another state is a more appropriate forum, *Gestl v. Frederick,* 133 Md.App. at 227–32, 754 A.2d 1087; *Solomon v. Solomon,* 118 Md.App. 96, 100–08, 701 A.2d 1199 (1997); and (3) pursuant to § 9.5–208, when Maryland

declines jurisdiction because the party seeking jurisdiction "has engaged in unjustifiable conduct." *See, e.g., Gruber v. Gruber,* 141 Md.App. 23, 45–54, 784 A.2d 583 (2001), *vacated on other grounds,* 369 Md. 540, 801 A.2d 1013 (2002) (use of deception to obtain "home state" advantage); *Cronin v. Camilleri,* 101 Md.App. at 709–10, 648 A.2d 694 (wrongful removal of children); *Malik v. Malik,* 99 Md.App. at 532–33, 638 A.2d 1184 (wrongful removal of child was "reprehensible"); *Etter v. Etter,* 43 Md.App. 395, 405, 405 A.2d 760 (1979) (removal of child was not "reprehensible"). (All of these examples of this reason for declining jurisdiction were decided under the former, pre–2004, UCCJA at § 9–208(a). The only noticeable difference, however, between the former section and the present § 9.5–208(a) is that where the former section used the phrase "reprehensible conduct," the current section uses "unjustifiable conduct." *Plus ca change* . . .).

Let it be carefully noted that the dismissal of a case pursuant to §§ 9.5–206, 9.5–207, or 9.5–208 is not based on the fact that the court lacks jurisdiction over the case. It is based on the very different ground that the court, albeit having presumptive jurisdiction in the first instance, nonetheless declines to exercise that jurisdiction for one of three reasons spelled out in those three sections. The lack of jurisdiction, by contrast, would be based on a failure to have satisfied § 9.5–201. *See Harris v. Simmons,* 110 Md.App. 95, 676 A.2d 944 (1996); *Olson v. Olson,* 64 Md.App. 154, 494 A.2d 737 (1985). *Cronin v. Camilleri, supra,* is a rare case of jurisdiction thrice declined. It is also an exceptionally good teaching vehicle. Speaking through Judge Murphy, this Court held that the Circuit Court for Baltimore City initially had proper jurisdiction over a custody case but then properly declined to exercise that jurisdiction for each of the three available statutory reasons. We upheld the trial court's reasoning in each of the three instances. The preliminary fact that Maryland has jurisdiction in the first instance is self-evidently not ultimately dispositive but is only a threshold consideration. If this were not so, §§ 9.5–206, 9.5–207, and 9.5–208 would be meaningless.

It is § 9.5–206(a) that controls the present case. It provides, in pertinent part:

(a) *When other state more appropriate*—Except as otherwise provided in § 9.5–204 of this subtitle, *a court of this State may not exercise its jurisdiction under this subtitle if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced* [2] *in a court of another state* having jurisdiction substantially in conformity with this title, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this State is a more convenient forum under § 9.5–207 of this subtitle.

(Emphasis supplied).

### A Contention Twice Bereft: The Preservation of an Objection; The Allocation of a Burden

■ Belatedly, the Wife, in the last page and one-half of her appellate brief, casts aspersions on the adequacy of the laws of Ghana, notwithstanding the fact that Ghana, as the former British colony of the Gold Coast for almost 150 years, is, along with the former Proprietary Colony of Maryland, a sister legatee of English common law. The Wife alleges in this regard:

Significantly, the limitation upon exercising jurisdiction is restrained by the condition that the 'court in another state' has jurisdiction 'substantially in conformity with this title.' *No evidence was offered and no argument was made that would even suggest that the Ghana court is exercising its jurisdiction 'substantially in conformity with this title.'* Indeed, the very fact that the Ghana court would allow the Appellee to proceed in the face of the admitted conduct that brought him to that Court implies that it is not in conformity with Md.Code Ann. 'FL' § 9.5–208. Moreover, the flimsy evidence that the Ghana court accepting in denying Appellant's jurisdictional objection suggests quite a different stan-

---

**2.** Section 9.5–101(f) defines "commencement:" " 'commencement' means the filing of the first pleading in a proceeding."

dard. That suggestion is reinforced by the concession of the Ghana Court that its decision was based upon the averment that the parties had been married under the 'customary law of marriage.' *There has been no evidence even offered that equates Ghana's customary law of marriage with Maryland's standard that custody placement be governed by the best interest of the children.*

(Emphasis supplied).

The Wife's challenge is twice bereft. In the first place, her objection to dismissal based on the inadequacy of the Ghana legal system has not been preserved for appellate review. We have scanned every line of the hearing conducted by Judge Eaves on July 26, 2010, on the motion to dismiss, and there is no remote mention of anything bearing on the inadequacy of the Ghana legal system. Judge Eaves was never asked by the Wife to make any ruling with respect to the laws of Ghana or even to consider the issue.

Even if the issue had been preserved, however, the Wife would still lose on the merits. To the Wife's charge that "no evidence was offered and no argument was made," we must ask, "Why not?" Not only did the Wife ask nothing of Judge Eaves, but she proffered nothing to Judge Eaves. In *Malik v. Malik,* 99 Md.App. at 533, 638 A.2d 1184, Judge Murphy was very clear with respect to the allocation of the burden of proof on this exception to the normal rule of deference:

Appellee claims that the law in Pakistan is "outdated" and "at odds with virtually every modern jurisdiction." *It will be necessary for appellee to prove that these contentions are true.*

(Emphasis supplied).

In *Malik,* 99 Md.App. at 535, 638 A.2d 1184, this Court could not have been more emphatic about which party bore the burden of production on this issue and about what the result would be if that burden of production were not satisfied by the party to whom it had been allocated:

On remand, the circuit court must first determine *whether the Pakistani court applied law that is in substantial*

*conformity with Maryland law. That determination requires the presentation of evidence ... The Pakistani court's custody order is presumed to be correct, and this presumption shifts to appellee the burden of proving by a preponderance of evidence* that (1) the Pakistani court did not apply the "best interest of the child" standard, or that (2) in making its decision, the Pakistani court applied a rule of law or evidence or procedure so contrary to Maryland public policy as to undermine confidence in the outcome of the trial. ... *Unless either is proven,* however, *the Circuit Court* shall decline to exercise its jurisdiction and *shall grant comity to the Pakistani custody decree.*

(Emphasis supplied). *And see Wolff v. Wolff,* 40 Md.App. 168, 178, 389 A.2d 413 (1978) ("[A] foreign decree is presumed valid until some evidence to the contrary is presented").

The presumption in the present case that the law of Ghana "is in substantial conformity with Maryland law" is no different than the presumption in *Malik* that the law of Pakistan was "in substantial compliance" with Maryland law. It is a presumption that would be readily indulged with no questions asked, were the "other jurisdiction" Ontario or Nova Scotia. *Malik* also dictates the result that unless the burden of rebutting the presumption of jurisdictional adequacy is satisfied, "the Circuit Court ... shall grant comity" to Ghana's assertion of jurisdiction over the case.

### Misplaced Reliance on a Self-Imposed Limitation

When asked at oral argument about her failure to have presented any evidence about the state of the law of Ghana or even to raise the subject in legal argument, the Wife replied that the hearing before Judge Eaves on July 26, 2010, was not an evidentiary hearing and that she, therefore, would not have been permitted to do so. Whatever its legal significance might have been, however, such a procedural scenario itself existed only in the imagination of the Wife. The hearing in question was held pursuant to the request of the Wife, filed on June 11, 2010. The Request, in its entirety, stated simply:

For reasons set forth in his [sic] motion for Reconsideration and to Set Aside Order, etc, Plaintiff requests that this motion be set for hearing.

At no point did the petition for a hearing request that witnesses be called and at no point did it indicate that witnesses or other evidentiary submissions would not be allowed. The request was simply silent as to what the agenda for the hearing would be. The agenda would presumably have included anything that the Husband needed to support his Motion to Dismiss the Wife's suit and anything that the Wife needed to oppose the Motion to Dismiss. That could have included the state of the law in Ghana. Judge Eaves granted the Wife's request and set the hearing for July 26, 2010. At no point did Judge Eaves set any limitations of any sort on the agenda for the hearing.

At the July 26, 2010 hearing itself, the Wife never called any witnesses nor attempted to offer any other evidence. Judge Eaves never in any way prohibited the Wife from doing so. The Wife never offered a proffer as to what her potential evidence might have shown. Judge Eaves never declined to receive such a proffer. The Wife never voiced any objection to the fact that the hearing was not as plenary as she might now, in hindsight, have liked it to have been. The Wife never, by way of argument, even made mention of such a possible issue. At no time did Judge Eaves do anything to limit or inhibit the Wife's presentation of her case opposing the dismissal of her claim. There was no mystery as to what the law required, moreover, for the clear commands of *Malik v. Malik, supra* (1994), had, as of the time of the hearing, already been on the books for 16 years.

Any imagined limitation that the Wife now invokes as an excuse for not having not met her burden of production with respect to the now, but not then, alleged inadequacy of the law of Ghana was purely a self-imposed limitation. It was a product exclusively of her own conjecture. The trial judge played no part in this, and it is, of course, only the trial judge

who can commit reversible error. As this Court pointed out in *DeLuca v. State,* 78 Md.App. 395, 397–98, 553 A.2d 730 (1989):

> We begin our analysis by restating *one of the most fundamental tenets of appellate review: Only a judge can commit error.* Lawyers do not commit error. Witnesses do not commit error. Jurors do not commit error. The Fates do not commit error. *Only the judge can commit error,* either by failing to rule or *by ruling erroneously when called upon, by counsel* or occasionally by circumstances, *to make a ruling.*

(Emphasis supplied). Counsel may have been neglectful, but Judge Eaves did not commit error.

### Custody Case as to Dede

■ The custody case with respect to Dede bears little resemblance to the custody case with respect to Tsikata. Dede, the daughter and younger child of the couple, was born in Ghana on October 2, 1999 and is now 12 years of age. After spending the first three years of her life in Ghana, Dede came with her parents to Harford County in 2002. Within a year, however, Dede returned to Ghana pursuant to a family decision that she would live with her relatives in Ghana and would receive her schooling in Ghana. Dede has lived in Ghana uninterruptedly for the last eight years.

Maryland is not the "home state" of Dede. Judge Eaves's dismissal of the custody case with respect to Dede was a legally correct one not because of any disinclination to exercise custody pursuant to § 9.5–206 but because Harford County, pursuant to § 9.5–201, had no jurisdiction over her case in the first place. The correctness of the dismissal of Dede's custody case requires no further analysis.

### Reasons for Declining Jurisdiction Are Not Mutually Exclusive

The dismissal of the Wife's divorce and custody claims in the present case was based primarily on § 9.5–206(a) and the fact that the Husband's claim, involving the same parties and the same issues, was already pending in Ghana when the

Wife's claim was filed in Harford County. It was essentially for that reason that Judge Eaves granted the Husband's Motion to Dismiss the Wife's suit.

In rendering her decision, however, Judge Eaves did at one point drift into considerations that would be very pertinent to a declination to exercise jurisdiction pursuant to § 9.5–207(a), which provides:

(a) *Action if this State is inconvenient forum.*—(1) *A court of this State* that has jurisdiction under this title to make a child custody determination *may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum* under the circumstances and *that a court of another state is a more appropriate forum.*

(2) The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

(Emphasis supplied).

Judge Eaves's analysis in this regard was:

*This would not be a convenient forum given that the children, and particularly at least one of the children, has resided in Ghana for the better part of seven years,* and the other child who did live here is now residing in Ghana and has lived there for more than six months.

I also believe, based on that, that *there is more known and more to be developed about the circumstances for the children in Ghana than here in Maryland at this point.*

(Emphasis supplied).

Sections 9.5–206, 9.5–207, and 9.5–208 all present cogent reasons why a trial court in this State, even while having jurisdiction over a custody case, might, in its discretion, decline to exercise that jurisdiction. These reasons for declining jurisdiction are by no means mutually exclusive. Even a merely secondary consideration could, in a given instance, conceivably tip the scales in an otherwise close case as to the

primary reason for declining jurisdiction.[3] This secondary reason for declining jurisdiction in this case was by no means necessary to validate Judge Eaves's decision, but it does afford comforting support.

### The "X" Factor

Although the parties have not argued nor even squarely raised it and although we have not found in the caselaw or statute law any express reference to it, there is an obvious issue in this case that cannot be ignored. The case before us is in actuality three cases, one divorce case and two separate custody cases. That pluralism creates an autonomous issue all of its own.

The issues of divorce and child custody are frequently closely intertwined. Custody cases involving full siblings are self-evidently closely intertwined. When dealing with the same parties and the same issues, the decision either to keep the cases together or to fragment them and send them off for trial to two, or even three, different jurisdictions, perhaps thousands of miles apart and on different continents, must inevitably be a major factor in any exercise of judicial discretion, quite aside from any deference to judicial economy or to witness convenience.

In the case of two siblings, even if each of the cases in a hypothetical vacuum might have gone in an opposite direction, how could a proper exercise of discretion ignore Judge Cathell's admonitions in *Hadick v. Hadick,* 90 Md.App. 740, 748, 603 A.2d 915 (1992), that "the best interests and welfare of the children of the same parents are best served by keeping them together to grow up as brothers and sisters under the same roof" and that "Maryland law frowns upon the division of siblings."

This was the elephant in the room that could not be ignored. Judge Eaves treated what was in the package before her as

---

**3.** The flip-side of the same logic, of course, is that sometimes the considerations in support of the respective sections of the UCCJEA might push in opposite directions.

parts of an indivisible totality. With all of the factors that must enter into an ultimate balancing, it would be impossible to hold that her decision not to fragment this case into two or three separate parts was an abuse of discretion. We hold that it was not.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**